233 So.2d 38 (1970)
Mrs. Charlotte POWELL, Plaintiff-Appellee,
v.
ALLSTATE INSURANCE COMPANY et al., Defendants-Appellants.
No. 11391.
Court of Appeal of Louisiana, Second Circuit.
March 3, 1970.
Rehearings Denied March 31, 1970.
*39 Ferris & Achee, by Roland J. Achee, Shreveport, for defendant-appellant Allstate Ins. Co.
J. N. Marcantel, John Gallagher, John L. Schober, Jr., Shreveport, for defendants-appellants City of Shreveport and Terry W. Farley.
Nesib Nader, Shreveport, for defendants-appellants Jerry and Willie Mae Nelson.
John B. Hussey, Shreveport, for plaintiff-appellee.
Before AYRES, DIXON and WILLIAMS, JJ.
DIXON, Judge.
This case arose out of an intersectional collision at Louisiana and Stoner Avenues in Shreveport, Louisiana on July 22, 1966. Allstate Insurance Company v. City of Shreveport et al., 233 So.2d 42, on the docket of this court, was consolidated with this case for the purpose of trial.
Plaintiff-appellee is Mrs. Charlotte Powell. The defendants are: Terry W. Farley, a member of the Shreveport Police force at the time of the accident; the City of Shreveport; Jerry Nelson and his wife, Willie Mae Nelson and Allstate Insurance Company.
There was judgment in the lower court in favor of plaintiff in the sum of $6,769.67 against all defendants, in solido. The judgment against Allstate Insurance Company was limited to the sum of $5,000.00. In the consolidated case, Allstate Insurance Company's demands against the City of Shreveport, Terry W. Farley, Jerry Nelson and Willie Mae Nelson were rejected. Allstate had demanded the sum of $448.52, the amount they paid Mrs. Powell under the collision coverage of the policy.
The accident occurred about 9:30 p.m. Stoner and Louisiana Avenues intersect at right angles, Stoner running east-west and Louisiana north-south. Traffic at the intersection is controlled by a traffic light.
Although the testimony is somewhat conflicting, it was established by a preponderance of the evidence that Mrs. Powell was stopped at a red light at the time of the accident. She was operating her automobile in a northerly direction on Louisiana Avenue. On the opposite side of the intersection headed south on Louisiana Avenue was the vehicle of Otis Alexander which had stopped facing the red light. Willie Mae Nelson, wife of Jerry Nelson, was operating a 1964 Pontiac automobile in an easterly direction on Stoner Avenue. As Mrs. Nelson approached the intersection she had to slow her vehicle to allow a taxicab, which was headed in a westerly direction, to make a left turn into a parking lot on the southwest corner of the intersection. In the meantime, Terry W. Farley, then a police officer, was proceeding south on Louisiana in a 1965 Ford vehicle, en route to Schumpert Memorial Hospital on a fire call. In order to pass Otis Alexander's stopped vehicle, Officer Farley drove into the lane for northbound traffic and then entered the intersection, colliding with the Nelson car, which in turn struck the Powell vehicle while it was still stopped at the red light. Mrs. Powell, Otis Alexander, Willie Mae Nelson and Willie Reth Anderson, a passenger in the Nelson vehicle, all testified that they did not hear a siren nor see a flashing light before the collision.
The City of Shreveport alleges that the action of Officer Farley was privileged as *40 defined in Louisiana R.S. 32:24. That statute provides as follows:
"Emergency vehicles; exceptions
"A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
"B. The driver of an authorized emergency vehicle may:
"(1) Park or stand, irrespective of the provisions of this Chapter;
"(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
"(3) Exceed the maximum speed limits so long as he does not endanger life or property;
"(4) Disregard regulations governing the direction of movement or turning in specified directions.
"C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
"D. The foregoing provisions shall not relieve the driver or an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others. Acts 1962, No. 310, § 1."
Officer Farley was driving an authorized emergency vehicle in response to an emergency call. Ostensibly Officer Farley has qualified under Paragraph A of the statute and "may exercise the privileges set forth in the Section." These privileges are enumerated in Paragraph B(1)-(4). However, these privileges are subject to the conditions found in Paragraphs C and D.
Drivers of emergency vehicles must "drive with due regard for the safety of all persons." Section B(2) states that the driver of an authorized emergency vehicle may proceed past a red signal, "but only after slowing down or stopping as may be necessary for safe operation." It is the conclusion of the court that Officer Farley breached the duty he owed to his fellow motorists and pedestrians when he entered the intersection without slowing down or stopping as necessity compelled for the safe operation of his vehicle. The sole proximate cause of the accident was the breach of this duty. This conclusion is in accord with Calvert Fire Ins. Co. v. Hall Funeral Home, 68 So.2d 626 (1953), where Judge Gladney stated, page 629:
"The burden of care imposed upon the operator of an emergency vehicle requires something more than the mere sounding of a siren or the blinking of a red light. These warnings are ordinarily sufficient to give notice of the approach of an emergency vehicle toward a point of danger, but there are other considerations. When approaching an intersection against a traffic signal light giving crosswise traffic a `green' or `go' sign, and where traffic approaching from either his left or right is obscured, the driver of the emergency vehicle should diminish his speed and bring under control his vehicle until he can be reasonably certain he may pass without unduly subjecting other motorists or pedestrians to danger. He should be aware that notwithstanding the warning from the siren other motorists or pedestrians may still be proceeding through the intersection on the invitation of a green light. Instances may well be imagined *41 where noise or interference of some nature would prevent the hearing of the signal. This, it seems to us, is a factor that should be anticipated by the driver of the emergency vehicle and appropriate control exercised, and where by his failure to so act other motorists or pedestrians are endangered the exemption granted under the ordinance must be considered forfeited."
At the time of the collision Mrs. Nelson was favored with the green light. Being so favored she was relieved of the duty to look for violations by side-street traffic facing the red light. Mrs. Nelson could be found derelict only if she could have avoided the accident by the exercise of the slightest degree of observation and care. Youngblood v. Robison, 239 La. 338, 118 So.2d 431, 2 A.L.R.3d 1 (1960); Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964).
This court recently had the opportunity to comment on both the Youngblood and Bourgeois cases. In Moore v. Traders & General Insurance Co., 227 So.2d 174, 176 (1969), we stated:
"This case is very much like Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964), except that the accident in the Bourgeois case occurred at night. The Supreme Court in that case acknowledged that `* * * where the motorist on the favored street could have avoided the accident by the exercise of the slightest sort of observation and care, * * * he will be found derelict.'
* * * * * *
"* * * It would be a life saving rule to require reasonable caution on the part of drivers at signal lights, but that is not the law. A driver approaching an intersection with the green light in his favor is not `obliged * * * to turn his head in the direction of traffic approaching from his left or right, * * *.' Youngblood v. Robison, 239 La. 338, 118 So.2d 431, 434, 2 A.L.R.3d 1 (1960)."
We therefore conclude that Mrs. Nelson is free from any negligence.
Mrs. Powell, who was stopped at the red light on Louisiana Avenue, is obviously free from negligence. She was the victim of the negligence of Officer Farley.
The trial court awarded Mrs. Powell $6,000.00 for personal injuries sustained. She suffered a cervical sprain which left her with a permanent 20% loss of motion.
Mrs. Powell was taken to the hospital by an ambulance. She remained hospitalized for eleven days, during which time she was under traction. She had muscle spasms and was treated with daily physiotherapy, medication for pain, and muscle relaxants. She was fitted with a cervical collar which she wore for approximately six months. She underwent physiotherapy and diathermy (heat treatment) daily for about five weeks after being released from the hospital. About ten months after the accident she still had numbness in her arm, pain in her neck, and headaches. Dr. A. E. Dean, her examination physician, testified that she suffered from mild tendonitis, occipital pain, slight crepitation, and numbness. Mrs. Powell also complained of eye trouble related to the neck sprain.
Plaintiff answered the appeal, seeking an increase in the award. However, the record does not disclose an abuse of discretion by the trial judge, without which we ought not modify the judgment.
The trial court erred in casting Jerry Nelson and his wife Willie Mae Nelson; the judgment against them will be reversed. The judgment against the City of Shreveport and Terry W. Farley will be affirmed.
The policy between Allstate and Mrs. Powell contains a provision which excludes a municipally owned vehicle from the uninsured motorist coverage. However, this exclusion does not have the sanction of the statute. To the contrary, La. R.S. 22:1406, subd. D(1) provides:
"Specific duties of casualty and surety insurance division
*42 "D. (1) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, under provisions filed with and approved by the Commissioner of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage." (Emphasis added).
The City of Shreveport and Terry W. Farley are solidarily liable to the plaintiff, Mrs. Powell. Allstate is liable to her only in contract and not as a joint tort-feasor in solido with the City of Shreveport and Terry W. Farley. Booth v. Fireman's Fund Ins. Co., 253 La. 521, 218 So.2d 580 (1969).
R.S. 22:1406 subd. D(4) gives Allstate, in the event it pays Mrs. Powell under the uninsured motorist provision, the right to the proceeds of her judgment against the city, to the extent of Allstate's payment.
Therefore, the judgment of the district court is affirmed in part and reversed in part. The judgment in favor of plaintiff, Mrs. Charlotte Powell, and against the defendants, Terry W. Farley and the City of Shreveport, in solido, is affirmed. The judgment in favor of the plaintiff, Mrs. Charlotte Powell, and against defendants, Jerry Nelson and is wife, Willie Mae Nelson, is reversed. The judgment in favor of Mrs. Charlotte Powell and against Allstate Insurance Company is amended, and there is now judgment in favor of Mrs. Charlotte Powell and against Allstate Insurance Company in the amount of $5,000.00; and in the event Allstate Insurance Company pays any sums under this judgment to the plaintiff, Mrs. Charlotte Powell, it shall be entitled to the proceeds of the judgment rendered herein in favor of Mrs. Charlotte Powell and against the City of Shreveport, to the extent of any such payment by Allstate Insurance Company to Mrs. Charlotte Powell by virtue of the judgment rendered herein. All judgments shall bear legal interest from date of judicial demand until paid; the City of Shreveport is cast with all costs.