STEVEN FRANEY, a minor, by MARDELL FRANEY, his mother and next friend, Plaintiff-Appellant, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY *et al.*, Defendants-Appellees.

(No. 70-204;

Fifth District—May 9, 1972.

*Modified upon denial of rehearing June 29, 1972.*

Kassly, Weihl & Bone, of Belleville, (Jon. G. Carlson, of counsel,) for appellant.

Oehmke, Dunham, Boman & Leskera, of East St. Louis, and Brady, Donovan & Hatch, of Belleville, (John W. Leskera, C. R. Brady, and Michael B. Constance, of counsel,) for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff appeals from a judgment of the trial court rendered in favor of defendant insurance companies in a declaratory judgment action against the insurance companies and an allegedly negligent driver. The judgment order being appealed contains the requisite finding that there is no just reason for delaying enforcement or appeal. The issues on appeal concern the interpretation of policies of liability insurance issued by defendant companies. We are to determine whether, under the facts presented, a State-owned automobile was a "non-owned automobile furnished for the regular use of," as contended by one of the companies, and also an "insured automobile" within the purview of an uninsured motorist clause, as contended by the other company.

The plaintiff was riding a bicycle when he was involved in a collision with an automobile owned by the State of Illinois and being operated by Edward Mirielli, an employee of the State of Illinois. The accident occurred as Mirielli was returning to work from his lunch break. The plaintiff brought suit against Edward Mirielli, against the Sentry Insurance Company, who had issued a policy of insurance to the defendant Mirielli upon his personal automobile, and against State Farm Mutual Automobile Insurance Company, who had issued a policy of insurance to John Franey, father of the plaintiff. Plaintiff claims coverage under the uninsured motorist provision of the State Farm policy.

For approximately six months prior to the accident the defendant Mirielli was employed by the State of Illinois at Frank Holten State Park, as a watchman or guard. He was furnished a State-owned automobile, equipped with a radio for purposes of contact with the Centreville police. His job was to patrol the park area. He was paid for eight hours work and during the six months he had been on the job he used one of these eight hours for lunch. It was his practice to use the vehicle to go home

for lunch, as his predecessors and instructors on the job had done. He lived approximately two blocks from the park, and his supervisor was aware of this use of the vehicle. There was some variance about the period of his lunch hour and the precise time it was to be taken. The occurrence in question happened on the usual route of return to the park and during the regular work hours for which Mirielli was paid. He went to work in his private car, parked it, used the State car during his eight hours, including the lunch period, and returned home after work in his private car. He understood that he could not use the vehicle for his own use.

The Sentry policy, in which Mirielli was the named insured, provided liability coverage "with respect to a non-owned automobile." In the definitions portion of the policy a non-owned automobile was defined as: "non-owned automobile means an automobile not owned by or furnished for the regular use of either the named insured or any resident of the same household, but the term 'nonowned automobile' does not include a temporary substitute automobile." The position of the defendant Sentry is that the State vehicle was furnished for the regular use of Mirielli and, therefore, Mirielli was not covered by the Sentry policy. The plaintiff contends that the vehicle was not furnished for the regular use of Mirielli or that this provision of the policy was ambiguous and should be construed against the company.

The only Illinois cases to which we are directed involving the question of what is regular use are *Schoenknecht v. Prairie State Farmers Association,* 27 Ill.App.2d 83, 169 N.E.2d 148; *Rodenkirk for Use of Deitenbach v. State Farm Mutual Insurance Company,* 325 Ill.App. 421, 60 N.E.2d 269; and *State Farm Mutual Automobile Insurance Company v. Berke,* 123 Ill.App.2d 455, 258 N.E.2d 838.

In the *Schoenknecht* case the named insured was provided an automobile by his employer gas company for use in checking gas leakage, and he was to return the vehicle to the employer's shop at the conclusion of his duty. On the occasion in question he drove the vehicle on his own affairs during the evening hours and was involved in a collision. The court said, "The use of this car at this time was, under the authorities, an isolated, casual, unauthorized use of an automobile other than his own and comes within the insuring agreements of this policy designated 'use of other automobiles' * * *. And the fact that the car which was involved in the accident had been furnished appellee by his employer for his regular use during his hours of employment was immaterial under the facts disclosed by this record."

In the *Rodenkirk* case the fiance of a daughter left his automobile with

the daughter for the use of members of her family while he was in the Armed Forces. Her father was involved in the accident in question, which involved a "regular use" provision of the family automobile policy. The Appellate Court affirmed the trial court's finding that this was a regular use as a matter of fact.

In the *State Farm* case the question of regular use was involved in a declaratory judgment action where the driver struck a pedestrian and motorcyclist with a car which had been rented under a regular lease agreement by her husband. The Appellate Court declined to find any ambiguity and affirmed the finding of the trial court that the wife's use of the rented vehicle was a "regular use."

A close case on the facts, referred to in both the *Schoenknecht* and *Rodenkirk* cases, is *Farm Bureau Mutual Automobile Insurance v. Boecher*, an Ohio Court of Appeals case reported in 48 N.E.2d 895. There, the driver was employed as a salesman by an automobile dealer and was given permission to drive one of many cars belonging to his employer for demonstration rides and trips to and from his home. The collision occurred when the salesman was driving home a used car. This was the first occasion on which the driver had used the specific car, but he frequently and regularly took home other cars and demonstrated them. The decision finding this was a regular use was based upon the frequency of use of automobiles in the same category and under the same circumstances for private, as well as business purposes.

■■ The circumstances of the particular manner of use, where a vehicle is alleged to have been furnished for regular use, must be examined. In the particular instance involved, the owner of one automobile was provided another automobile which, according to the evidence, he used regularly in his work and regularly for his own purpose in driving the vehicle home for lunch, the latter use occurring at a particular interval of time and within a relatively well defined limit of travel. This falls clearly within the type of situation which has been considered to be a regular use of the named insured. Accordingly, we find that the "nonowned automobile furnished for the regular use of" provision prevented Mirielli from being within the terms of his contract of insurance with Sentry Insurance Company, and in this respect the trial court's judgment was correct.

The State Farm Mutual Automobile Insurance Company policy covered the minor plaintiff if the vehicle being operated by Mirielli was uninsured. The definition of an uninsured automobile in the State Farm policy includes the following:

"but the term 'uninsured automobile' shall not include:

(iv) a land motor vehicle which is owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing;"

Since this vehicle was owned by the State, it appears to come under this provision of the policy excluding uninsured motorist coverage.

It is apparent that the State Farm Company is attempting to exclude from the uninsured motorist provisions of its policy cars owned by nations, states and governments on the theory that vehicles driven on government business would ordinarily provide a fund under the various statutes permitting plaintiffs to sue governments, such as the Federal Tort Claims Act, the Illinois Court of Claims Act.

It must be considered that at the date of the contract of insurance and the occurrence in question chapter 73, section 755(a), Illinois Revised Statutes, 1967, was in effect. In substance, this section provided that no liability policy should be issued unless uninsured motorist protection in accordance with the terms of the statute was provided.

It had been the law in Illinois for many years that statutory provisions in force at the time of the making of a contract of insurance form a part of such contract and are to be construed in connection with the policy of insurance. (22 Illinois Law and Practice, Insurance, Section 156.) This rule was applied to Workmen's Compensation in *Morris v. Central West Cas. Co.*, 351 Ill. 40, 183 N.E. 595; to standard provision of fire policies from the Illinois statute, *Lumbermen's Mutual Insurance Company v. Slide Rule and Scale Engineering Company*, 79 Fed. Supp., 394, affirmed 177 Fed.2d 305; and to omnibus clauses in automobile insurance, *Konrad v. Hartford Acc. & Indem. Co.*, 11 Ill.App.2d 503, 137 N.E.2d 855; *Landis, for Use of Talley v. New Amsterdam Cas. Co.*, 347 Ill.App 560, 107 N.E.2d 187. By these provisions the statutory provisions applicable and in force at the time of the making of the contract of insurance form a part of the contract and are construed with the contract of insurance.

The Supreme Court, in *Smiley v. Toney's Estate*, 44 Ill.2d 127, 254 N.E.2d 440, stated with respect to uninsured motorist coverage: "The statutory coverage is mandatory, and may not be whittled away by an unduly restrictive definition." In that case the court declined to hold that an insured party was uninsured.

In view of the conclusion of the Supreme Court that the statutory coverage is indeed mandatory, the question is whether the provision of the State Farm policy is unduly restrictive in its definition, permitting the exclusion of governmental automobiles.

■■ We can only conclude that this portion of the definition is unduly restrictive. The two incidents mentioned by the statute are those of being "uninsured" or involving a "hit and run" vehicle. It is obvious that the

operator of a governmentally owned vehicle need not be insured. There are many different possibilities by which there might be no liability under the several acts fixing liabilities with respect to governments and governmental subdivisions. Besides this, the provisions governing governmental liability have been and are often changed in many particulars. There is no likelihood of a windfall or double recovery, because under the further terms of State Farm's policy the company is entitled to recover from the tortfeasor the amounts paid out, either in its own name or in the name of the insured. The State Farm uninsured motorist coverage suggests that if the insured commences an action on his own against the tortfeasor he may very well waive the provisions of the uninsured motorist coverage.

One can hypothesize that a person might steal a governmental vehicle, be involved in the collision injuring the prospective plaintiff and still the State Farm exclusion would appear to apply. Artful minds could construct countless exclusions which would chip away at the basic liability intended by the statute and surprise innocent insureds who believed themselves to be covered.

Under the circumstances we conclude that the trial court erred in its judgment with respect to the State Farm policy and that portion of the judgment of the trial court finding that the plaintiff was not an insured under the State Farm Mutual Insurance Company policy is reversed and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed and remanded in part.

G. MORAN, P. J., and EBERSPACHER, J., concur.

### SUPPLEMENTAL OPINION UPON DENIAL OF PETITION FOR REHEARING

Mr. JUSTICE JONES delivered the amendment to opinion of the court:

Following the filing of the opinion in this case defendant State Farm Mutual Automobile Insurance Company filed a Petition for Rehearing in which it is contended that the court misconstrued ch. 73, sec. 755(a), Ill. Rev. Stat., 1969. The contention is founded upon the premise that the statute requires that uninsured motorist coverage must be offered "* * * in limits for bodily injury or death set forth in Section 7—203 of the 'Illinois Motor Vehicle Law', approved July 11, 1957, as heretofore and hereafter amended, * * *". Our attention is then directed to sec. 7—202(7) of the Motor Vehicle Law (Ill. Rev. Stat. 1969, ch. 95½,

sec. 7—202(7)) which excepts State owned automobiles from the requirements of the Financial Responsibility Law. (Ill. Rev. Stat. 1967, ch. 7A.) The argument is then made that the legislature granted the exemption to the State of Illinois from compliance with the Financial Responsibility Law for the reason that an injured motorist has an opportunity to sue in the Court of Claims and recover money damages if warranted.

The case of *Smiley v. Toney's Estate*, 44 Ill.2d 127, 254 N.E.2d 440, cited in the Petition for Rehearing is quoted in the opinion of the court on the point "The statutory coverage is mandatory, and may not be whittled away by any unduly restrictive definition." In the particular instance involved the plaintiff was riding a bicycle when he was injured in a collision with an automobile being driven by Edward Mirielli, who was a party to the suit. The automobile was owned by the State of Illinois. The injured minor plaintiff was covered by the policy of insurance issued to his father with State Farm Mutual. Under the decision arrived at by us, Mirielli was uninsured. We did not have occasion to decide whether he was in the course of his employment for the State of Illinois at the time of the collision in question, and if we had done so it would not have been binding upon the State of Illinois, since they were not a party to the suit. This court did not find, on page 4 or elsewhere in its opinion, that Mirielli was within the scope of his State employment when the accident happened. The liability of the State was, therefore, not involved in this particular case.

It is, of course, true that if Mirielli was in the course of his employment an action could have been brought on the minor's behalf in the Court of Claims. It is also possible that a judgment could have been obtained against Mirielli individually and full compensation obtained by the plaintiff. These, however, are speculations.

As we pointed out in the initial opinion: "There are many different possibilities by which there might be no liability under the several acts fixing liabilities with respect to governments and governmental subdivisions. Besides this, the provisions governing governmental liability have been and are often changed in many particulars."

Petitioner correctly cites *Putnam v. New Amsterdam Casualty Co.*, 48 Ill.2d 71, 269 N.E.2d 97, for the proposition that the "* * * purpose of the statutory uninsured motorist provisions is to assure that compensation will be available to policy holders, in the event of injury by an uninsured motorist, to at least the same extent compensation is available for injury by a motorist who is insured in compliance with the Financial Responsibility Law." We do not believe that the opportunity to sue in the Court of Claims for damages against the State of Illinois assures that

compensation will be available against Edward Mirielli. We further do not believe that it is equally sure that the State is liable.

■ It is relatively unusual for the average driver or bicyclist to be injured by a State automobile. If the driver of the State automobile is uninsured, then the occurrence is within the scope of the mandatory uninsured motorist coverage. The fact that the State of Illinois is excused from complying with the Financial Responsibility provisions of the Illinois Motor Vehicle Act is immaterial. The legislature could have provided some sort of exception to the mandatory coverage of the uninsured motorist insurance law in a case where the motor vehicle was owned by the State of Illinois, but it did not do so. We think that the only purpose of the statutory reference in the Insurance Code to the Illinois Motor Vehicle Code is to establish the amount of the minimum limits for uninsured motorist coverage. This is pointed out by the Supreme Court in the case of *Putnam v. New Amsterdam Casualty Company, supra,* where it says: "* * * in 1967, the legislature made the coverage mandatory and expressed the intention that the limit stated in the Financial Responsibility Law should be deemed a minimum not precluding coverage in higher amounts."

The petition for rehearing filed by State Farm Mutual Automobile Insurance Company is accordingly denied.

G. MORAN, P. J., and EBERSPACHER, J., concur.