Ila Mae FRANCIS, Petitioner,

v.

INTERNATIONAL SERVICE INSUR-
ANCE COMPANY, Respondent.

No. B–5884.

Supreme Court of Texas.

Dec. 22, 1976.

**58**

C. V. Flanary, Paris, for petitioner.

Vial, Hamilton, Koch, Tubb, Knox & Stradley, Byron L. Falk, Dallas, for respondent.

GREENHILL, Chief Justice.

This case concerns the Texas Uninsured Motorist Act,[1] and the definition of "uninsured automobile" as it appears in an insurance policy issued pursuant to the Act.

The plaintiff, Ila Mae Francis, filed this action in the District Court of Lamar County against the respondent, International Service Insurance Company and another insurance company. The cause of action against the other company was severed, and so the respondent will be here referred to as the insurance company.

The plaintiff alleged that on September 13, 1968, she was a passenger in an automobile that was struck at an intersection in the City of Grand Prairie by a fire truck owned by that City and operated by a city fireman. She sought recovery against the insurance company under the uninsured motorist provisions in an automobile liability insurance policy issued by the company to the driver of the car in which she was a passenger. In its answer, the insurance company alleged that at the time of the collision, the driver of the fire truck was acting in the course and scope of his employment as a fireman for the City of Grand Prairie Fire Department, and that at that time, the fire truck was en route to a fire at the city dump.

The insurance company filed a motion for summary judgment. The parties stipulated that the automobile insurance policy upon which suit was brought included a provision that ". . . the term 'uninsured automobile' shall not include: . . . an automobile or trailer owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing."[2] The parties also stipulated that neither the City

---

1. Texas Insurance Code, Article 5.06–1, herein called "the Act." References are to Vernon's Texas Insurance Code Annotated unless otherwise indicated.

2. The uninsured motorist provision of this policy provided in part:

> Part IV—Family Protection Coverage
> COVERAGE J FAMILY PROTECTION (DAMAGES FOR BODILY INJURY)
> To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury", sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; . . .
> DEFINITIONS
> . . . ., and under Part IV:
> "insured" means:
> (a) the named insured and any relative;
> (b) any other person while occupying an insured automobile; . . .
> &ast; &ast; &ast; &ast; &ast; &ast;

"uninsured automobile" includes a trailer of any type and means:
(a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder, or
(b) a hit-and-run automobile;
but the term "uninsured automobile" shall not include:
(1) . . .
(2) . . .
(3) an automobile or trailer owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing,
(4) . . .
(5) . . . ..

of Grand Prairie nor the fireman had in effect at the time of the collision a policy of liability insurance, or a bodily injury liability bond applicable to the fire truck. They further stipulated that for the purposes of the motion for summary judgment, no material issues of fact existed, and that only one legal question was in dispute, namely:

Whether the exclusion from the definition of an "uninsured automobile" in the aforementioned policy of "an automobile or trailer owned by the United States of America, Canada, a state, a political subdivision of any such government or any agency of the foregoing" is invalid.

The trial court held that the above provision was valid and entered judgment that the plaintiff take nothing. The plaintiff thereupon appealed to the court of civil appeals. Her sole point of error was that the trial court had erred in holding valid the policy provision which excluded certain governmentally owned automobiles from the definition of "uninsured automobile." The court of civil appeals affirmed the trial court's judgment. 533 S.W.2d 408. We affirm.

■ The sole question on this appeal is the validity of the above provision in the insurance policy, whereby "an automobile or trailer owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing" is excluded from the definition of an "uninsured automobile." It is undisputed that this exclusion is in a form approved by the Texas State Board of Insurance [the Board]. The insurance company relies on the Texas Uninsured Motorist Act [the Act], Tex.Ins.Code Ann. art. 5.06–1, to support its contention that the exclusion in question is valid. The relevant portion of the Act follows:

(2) For the purpose of this coverage, the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency. The State Board of Insurance is hereby authorized to promulgate the forms of the uninsured motorist coverage. *The Board may also, in such forms define "uninsured motor vehicle" to excluded certain motor vehicles whose operators are in fact uninsured.* [emphasis added].

To support her argument that the exclusion at issue in this case is invalid, the plaintiff cites decisions from several other jurisdictions that have declared invalid exclusions of governmentally owned vehicles from the scope of the states' uninsured motorist acts. *See Vaught v. State Farm Fire & Casualty Co.,* 413 F.2d 539 (8th Cir. 1969); *Higgins v. Nationwide Mutual Insurance Co.,* 291 Ala. 462, 282 So.2d 301 (1973); *State Farm Mutual Automobile Insurance Co. v. Carlson,* 130 Ga.App. 27, 202 S.E.2d 213 (1973); *Franey v. State Farm Mutual Automobile Insurance Co.,* 5 Ill.App.3d 1040, 285 N.E.2d 151 (1972); and *Powell v. Allstate Insurance Co.,* 233 So.2d 38 (Ct. App.La.1970). These opinions are not persuasive on the issue in this case. In none of the above cases did the state's Uninsured Motorist Act contain language that expressly authorized the exclusion of vehicles whose operators were, in fact, uninsured. The Texas Act, on the other hand, does contain express language to that effect. See Article 5.06–1(2), *supra.* Moreover, in the only decision cited to us in which the exclusion of governmentally owned automobiles from the policy coverage was upheld, the uninsured motorist chapter was by statute expressly made not applicable to vehicles owned by government units. *Jones v. Southern Farm Bureau Casualty Co.,* 251 S.C. 446, 163 S.E.2d 306 (1968). The *Jones* case is thus persuasive authority for the proposition that express statutory language excluding uninsured automobiles from the statute's coverage shall be given effect. Although the language of the Texas Act does not expressly exempt governmentally owned vehicles, as did that of the South Carolina statute, we do not believe that difference to be significant.

The Texas cases cited by the plaintiff in support of her position do not control the resolution of the question in this case. *See American Liberty Insurance Co. v. Ranzau,* 481 S.W.2d 793 (Tex.1972); *Hamaker v. American States Insurance Co.,* 493 S.W.2d 893 (Tex.Civ.App.1973, writ ref'd n. r. e.); *Northwestern Mutual Insurance Co. v. Lawson,* 476 S.W.2d 931 (Tex.Civ.App., no writ); and *Fidelity & Casualty Co. v. Gatlin,* 470 S.W.2d 924 (Tex.Civ.App.1971, no writ). Those cases dealt with the validity of uninsured motorist provisions that limited an insured's recovery to the statutory limits of required coverage for one policy when the insured was eligible to recover for his damages from other sources—from, example, workmen's compensation or the uninsured motorist coverage of another insurance policy. It is true, as petitioner states, that these "other insurance" clauses were declared invalid by this Court in *Ranzau, supra,* insofar as such a clause would operate to limit insureds' recoveries to the statutory minimums for one policy. But *Ranzau,* and the other Texas cases cited by the plaintiff, dealt with the language of Article 5.06–1(1) that provides in general terms that the Act is to be effectuated "under provisions prescribed by the Board . . . ." The question in this case is the validity of an exclusion in a form promulgated by the Board under authority given it in Article 5.06–1(2): "The Board may also, in such forms, define 'uninsured motor vehicle' to exclude certain motor vehicles whose operators are in fact uninsured." In *Ranzau* there was no statutory language expressly giving the Board authority to limit recoveries under the Act when other compensation was available to the insured. In this case there is statutory language expressly giving the Board the authority to exclude from the ambit of the Act vehicles whose operators are in fact uninsured. Therein lies the distinction between *Ranzau* and this case and the reason why we are not bound by our earlier holding there.

The plaintiff does not question the power of the legislature to delegate to the Board the authority to regulate the coverage of insurance policies by prescribing standard forms, clauses and endorsements. She does contend, however, that a delegation of power to the Board must be clear and unambiguous, *citing* 53 Tex.Jur.2d *Statutes,* Sections 35, 36 (1964), that the Board may exercise only such authority as is conferred on it by law in unmistakable terms, and that such authority will not be construed as being conferred by implication, *citing Key Western Life Insurance Co. v. State Board of Insurance,* 163 Tex. 11, 350 S.W.2d 839 (1961). She further argues that Article 5.06–1(2) does not, in clear and unmistakable language, authorize the exclusion at issue in this case. We disagree. We find no ambiguity or lack of clarity in the statutory language that gives to the Board the authority to define "uninsured motor vehicle" so as to exclude certain vehicles whose operators are, in fact, uninsured.

■ The plaintiff's final argument is that the exclusion of governmentally owned vehicles from the definition of "uninsured automobile" is invalid because the exclusion is inconsistent with the purposes of the Act. We recognize that we must hold invalid any Board-approved provision that conflicts with the Act. *See Kemp v. Fidelity and Casualty Co.,* 504 S.W.2d 633 (Tex.Civ.App. 1973), *writ ref'd n. r. e. per curiam,* 512 S.W.2d 688 (Tex.1974); *Westchester Fire Insurance Co. v. Tucker,* 512 S.W.2d 679 (Tex.1974); *American Liberty Insurance Co. v. Ranzau,* 481 S.W.2d 793 (Tex.1972). The authorizing language of Article 5.06–1(2) is broad, but the Board does not possess absolute discretion in prescribing forms of uninsured motorist coverage. The Board must act consistently with and in furtherance of the purposes of the Act when it prescribes forms containing exclusions from the definition of "uninsured automobile." The validity of the exclusion here at issue, then, depends on what the purposes of the Act are and whether the Board, in promulgating the exclusion, acted consistently with and in furtherance of those purposes.

■ We believe at least one purpose of the Texas Uninsured Motorist Act may be ascertained from a reading of three por-

tions of the Act in conjunction. The first of these appears in Article 5.06–1(1):

". . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . ."

The second portion of the Act is the authorizing language of Article 5.06–1(2):

The State Board of Insurance is hereby authorized to promulgate the forms of the uninsured motorist coverage. The Board may also, in such forms, define "uninsured motor vehicle" to exclude certain motor vehicles whose operators are in fact uninsured.

The third portion is found in the third section of the Act, as it appears in Texas Laws 1967, chapter 202, section 3 at 448:

Sec. 3. The fact that the people of Texas are constantly exposed to financial loss caused by negligent *financially irresponsible motorists,* and the further fact that it is the intent and purpose of this Act to provide a means of protecting the conscientious and thoughtful motorist against such loss, thereby benefiting all the citizens of this state, constitutes an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House, and the Constitutional Rule requiring bills to go into effect ninety days from and after their passage, be and the same are hereby suspended, . . . [emphasis added]

The words "uninsured motor vehicles" appearing in Article 5.06–1(1) were certainly used with knowledge that under Article 5.06–1(2) the Board was empowered to exclude from the definition of "uninsured motor vehicle" some vehicles that were in fact uninsured. We are therefore convinced from our reading of the above portions of the statute that the purpose of the Act was not to protect insureds from *all* negligent uninsured motorists. We believe that the purpose of the Act is that purpose stated in Section 3 quoted above, that is, to protect the conscientious and thoughtful motorist against losses caused by negligent financial-

ly irresponsible motorists. The Legislature did not intend all uninsured motorists to be covered by this Act, but only those uninsured motorists who are "financially irresponsible."

Given the purpose of the Act, the question remaining is whether the Board's exclusion of certain government-owned vehicles from the definition of "uninsured motor vehicle" is consistent with, and in furtherance of, that purpose. We believe that it is.

■ The purpose of the Act is to protect insureds against negligent, financially irresponsible motorists. It was not designed as a system for giving relief to people who cannot recover from a tortfeasor because of sovereign immunity. At the time of the collision that gave rise to this suit, and at the time the insurance policy here in dispute was issued, the Texas Legislature had not relaxed in any way the doctrine of sovereign immunity. The doctrine, as it then existed, protected municipalities from liability for the torts of their employees committed when the municipality was performing a governmental, as opposed to a proprietary, function. *See City of Austin v. Daniels,* 160 Tex. 628, 335 S.W.2d 753 (1960); Greenhill and Murto, *Governmental Immunity,* 49 Texas L.Rev. 462 (1971). It was not until 1970 that the doctrine was abolished in certain respects, and then only prospectively. Texas Tort Claims Act, Article 6252–19, Sections 3, 4, 14(1) and (8). If the plaintiff could not recover for her injuries from the City of Grand Prairie, it would not be because the City was "financially irresponsible" in not insuring the fire truck. The reason would be because the then-existing doctrine of sovereign immunity protected the city in the performance of the governmental function of providing fire protection. *City of Port Arthur v. Wallace,* 141 Tex. 201, 171 S.W.2d 480 (1943).

That a governmental unit is protected by the doctrine of sovereign immunity would certainly preclude recovery from that unit, but that does not mean that the unit is "financially irresponsible" for purposes of the Texas Uninsured Motor Vehicle Act.

We believe that the exclusion by the Board of certain government-owned vehicles from the definition of "uninsured automobile" was a rational exercise of the Board's delegated authority, consistent with the purposes of the Act, and that the exclusion, as applied to the facts of this case, must therefore be upheld.

The judgment of the court of civil appeals is affirmed.

Concurring opinion by Justice DANIEL.

Dissenting opinion by Justice SAM D. JOHNSON in which Justices STEAKLEY and McGEE join.

DANIEL, Justice (concurring).

I concur but respectfully suggest that this is a subject to which the Legislature and the Texas State Board of Insurance might give further study. It is apparent from cases cited by the Court that several states provide their citizens with the opportunity for greater insurance protection against owners and operators of uninsured motor vehicles by not excluding vehicles owned by political agencies and subdivisions.

SAM D. JOHNSON, Justice (dissenting).

This dissent is respectfully submitted.

The majority finds no ambiguity in Article 5.06–1(2), Texas Insurance Code Annotated (Pamp.Supp.1975–76), and a furtherance of the purpose of that statute by the exclusion of government-owned vehicles from the definition of "uninsured automobile." This dissent challenges the conclusion of the majority in both instances.

The Insurance Board "can exercise only such authority as is conferred upon it by law in clear and unmistakable terms and the same will not be construed as being conferred by implication." *Board of Insurance Com'rs v. Guardian Life Ins. Co.,* 142 Tex. 630, 180 S.W.2d 906, 908 (1944). In the exercise of such authority "the Board may not act contrary to but only consistent with,

and in furtherance of, the *expressed* statutory purposes." *American Liberty Insurance Company v. Ranzau,* 481 S.W.2d 793, 796–97 (Tex.1972). [Emphasis added.]

With respect to the scope of the Insurance Board's authority, Article 5.06–1(2) grants it only the power to "exclude certain motor vehicles whose *operators* are in fact uninsured." [Emphasis added.] Thus, the Insurance Board does not have the authority in "clear and unmistakable terms" to sanction policy provisions which exclude motor vehicles whose *owners* are uninsured. The policy provision involved in this case does not exclude uninsured *operators* of motor vehicles. Instead, it excludes uninsured *owners* of motor vehicles; [1] namely, governments. Accordingly, it cannot be said that the Insurance Board in "clear and unmistakable terms" had the authority to approve this exclusion of government-*owned* vehicles from the definition of "uninsured automobile."

Other courts have also held that a provision excluding government-owned vehicles from the definition of "uninsured automobile" was invalid on the ground that the exclusion did not have the sanction of statute. *Higgins v. Nationwide Mutual Insurance Co.,* 291 Ala. 462, 282 So.2d 301 (1973); *State Farm Mutual Automobile Ins. Co. v. Carlson,* 130 Ga.App. 27, 202 S.E.2d 213 (1973); *Powell v. Allstate Insurance Company,* 233 So.2d 38 (La.Ct.App.1970). In *Franey v. State Farm Mutual Automobile Ins. Co.,* 5 Ill.App.3d 1040, 285 N.E.2d 151 (1972), it was stated that such an exclusion would be "unduly restrictive" and would defeat the purpose of mandatory uninsured motorist coverage.

An analysis of the purpose of the uninsured motorist statute also leads to the conclusion that the exclusion of government-owned vehicles is invalid. Article 5.06–1 was passed ". . . for the *protection of persons* insured thereunder who are legally entitled to recover damages *from owners or*

---

1. The policy provides " 'uninsured automobile' shall not include . . . an automobile or trailer *owned* by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing, . . ." [Emphasis added.]

*operators of uninsured motor vehicles . . . ."* [Emphasis added.] The obvious purpose of the Legislature was to protect the insured from a financial loss due to an inability of the tort-feasor to pay for the damage inflicted. Further support for this interpretation can be found in the emergency clause of the legislative Act which added Article 5.06–1 to the Texas Insurance Code:

"Sec. 3. The fact that the people of Texas are constantly exposed to *financial loss caused by negligent financially irresponsible motorists,* and the further fact that *it is the intent and purpose of this Act to provide a means of protecting the conscientious and thoughtful motorist against such loss,* thereby benefiting all the citizens of this state, constitutes an emergency . . . ." Texas Laws 1967, Chapter 202, Section 3, at 449. [Emphasis added.]

In the instant case Francis is legally entitled to recover from the fireman, the operator of the uninsured fire truck, under the reasoning of *Eubanks v. Wood,* 304 S.W.2d 567 (Tex.Civ.App.—Eastland 1957, writ ref'd n. r. e.). Further, the fireman had no liability insurance policy or a bodily injury liability bond applicable to the fire truck and, thus, was financially irresponsible. Accordingly, Francis falls within that class of people the Legislature intended to protect under Article 5.06–1. Since the definition of "uninsured automobile" approved by the Insurance Board would frustrate the purpose of the Legislature it must be viewed as invalid.

It should be noted that in the only case cited to this court in which the exclusion of government-owned vehicles from the definition of "uninsured automobile" was upheld, the statute specifically excluded government-owned vehicles and there existed a method whereby the insured person could recover, and did recover, $4,000 from the government unit which owned the vehicle. *Jones v. Southern Farm Bureau Casualty Company,* 251 S.C. 446, 163 S.E.2d 306 (1968). That court could therefore reasonably conclude that the South Carolina Legislature had enacted a comprehensive scheme in which the injured person could recover from a government unit even though the unit had no insurance policy and in spite of the fact that government-owned vehicles were excluded from the definition of an "uninsured automobile." Similarly, the Texas Legislature could have explicitly excluded government-owned vehicles from the definition of "uninsured automobile" and explicitly waived the defense of government immunity and thereby effected its purpose of protecting the insured motorist from a financial loss due to an inability of the tort-feasor to pay for the damage inflicted. It did not do so. Instead, the Legislature chose to allow exclusion of uninsured *operators.*

The only categories of uninsured operators which can be excluded in view of the legislative intent to protect the insured motorist from a financial loss due to an inability of the tort-feasor to pay for the damage inflicted are those classes which would still allow the insured motorist to recover damages from a tort-feasor. For example, an operator of an automobile whose owner would be liable could be properly excluded.

STEAKLEY and McGEE, JJ., join in this dissent.

