Bobby FOSTER, Appellant,

v.

**TRUCK INSURANCE EXCHANGE**
and Cigna Insurance Company
of Texas, Appellees.

No. 05–95–01050–CV.

Court of Appeals of Texas,
Dallas.

Aug. 22, 1996.

Rehearing Overruled Oct. 15, 1996.

Bertran T. Bader, III, Bertran T. Bader, III, P.C., for Appellant.

Julian V. Buenger, Law Offices of Julian V. Buenger, Roland Castaneda, General Counsel/DART, John Holman Barr, M. Forest Nelson, Burt Barr & Associates, L.L.P., Dallas, for Appellees.

Before LAGARDE, KINKEADE and MORRIS, JJ.

## OPINION

MORRIS, Justice.

This case involves unrelated questions about underinsured motorist insurance coverage and subrogation rights to interpleaded funds. In particular, Bobby Foster appeals the summary judgment granted to Truck Insurance Exchange decreeing that Foster is not entitled to underinsured motorist coverage under a policy issued by Truck Insurance Exchange. Foster also appeals the trial court's award under the Workers' Compensation Act to CIGNA Insurance Company of Texas of a portion of interpleaded funds deposited into the registry of the trial court. Because we conclude the trial court properly rendered judgment, we affirm the trial court's summary judgment in favor of Truck Insurance Exchange and its award to CIGNA Insurance Company of Texas.

### Factual Background

While driving a truck owned by his employer, Foster was injured in an accident with a bus. Foster filed a claim for workers' compensation and medical benefits with his employer's workers' compensation insurance carrier, CIGNA Insurance Company of Texas. CIGNA initially denied the claim. But after a hearing and appeal before the Texas Workers' Compensation Commission, CIGNA began paying benefits. CIGNA additionally paid back-benefits, interest on those back-benefits, and the attorney's fees incurred by Foster in the compensation case. By order of the Commission, the attorney's fees were deducted from Foster's weekly income benefits and paid by CIGNA directly to Foster's attorney.

In addition to seeking workers' compensation benefits, Foster sued the Dallas Area Rapid Transit Authority (DART), the owner of the bus, and the bus driver for damages. Moreover, Foster named Truck Insurance Exchange (TIE), his employer's automobile insurance carrier, as a defendant claiming he was entitled to underinsured motorist coverage. CIGNA intervened in the suit to assert its subrogation rights to any monies recovered by Foster.

DART offered to settle Foster's claim for $100,000, the limit of DART's liability under the Texas Tort Claims Act. DART deposited the $100,000 into the trial court's registry after interpleading Foster's and CIGNA's competing claims. Afterward, the trial court

dismissed from the case both DART and the bus driver.

TIE made no claim to the funds in the court's registry. TIE moved for summary judgment against Foster solely on the basis that the automobile insurance policy at issue excluded underinsured motorist coverage for Foster's accident. Specifically, TIE argued that the DART bus was excluded from the policy's definition of an uninsured motor vehicle. The trial court granted TIE's motion.

Most of the interpleaded funds were distributed to Foster and CIGNA by agreement. The only issues presented to the trial court relating to the remaining funds concerned whether CIGNA had a right of reimbursement for certain amounts it paid because of the underlying workers' compensation dispute between Foster and CIGNA. Foster argued CIGNA's subrogation rights did not apply to amounts paid by CIGNA to Foster's lawyer in the workers' compensation case or to the interest payment CIGNA was ordered to pay on back-benefits. The trial court concluded that both payments were includable in CIGNA's subrogation interest and ordered those amounts of the interpleaded funds allocated to CIGNA.

## Discussion

In his first point of error, Foster argues the trial court erred in granting TIE's motion for summary judgment. Foster does not argue that the policy exclusion relied upon by TIE is inapplicable. Instead, Foster argues the exclusion is an invalid restriction on coverage and, therefore, unenforceable.

The policy generally states that TIE agrees to pay the insured damages he is legally entitled to recover as the result of an accident with an uninsured motor vehicle. The definition of an "uninsured motor vehicle" includes an "underinsured motor vehicle." The definition of an "uninsured motor vehicle" specifically excludes, however, government-owned vehicles unless two conditions are met. First, the operator of the government-owned vehicle must be uninsured. Second, there must be no statute imposing liability on the governmental body for an amount equal to or greater than the

uninsured and underinsured motorist (UIM) coverage limits.

In this case, it is undisputed that the DART bus is a government-owned vehicle and the bus driver was uninsured. It is also undisputed that the Texas Tort Claims Act imposes liability on DART for payment of damages up to $100,000 for each person injured in a motor vehicle accident. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021 & 101.023 (Vernon 1986 & Supp.1996). The automobile insurance policy provides UIM coverage up to $100,000. DART's maximum potential liability, therefore, is equal to the maximum amount Foster could recover under the policy. Because Foster could recover the same amount from DART as he could under the policy, the second condition for avoidance of the government-owned vehicle exclusion is not met and the exclusion applies to Foster's accident.

■ The Texas legislature requires insurers to provide UIM coverage. *See* TEX. INS. CODE ANN. art. 5.06–1 (Vernon 1981 & Supp. 1996). Exclusions in automobile insurance policies that are inconsistent with and do not further the purpose of the UIM statute are invalid and unenforceable. *Stracener v. United Servs. Auto Ass'n,* 777 S.W.2d 378, 384 (Tex.1989); *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 868 S.W.2d 861, 864 (Tex. App.—Dallas 1993, writ denied). Foster acknowledges that article 5.06–1(2)(c) of the UIM statute permits insurers to define "uninsured motor vehicle" to exclude certain motor vehicles whose operators are in fact uninsured. *See* TEX. INS.CODE ANN. art. 5.06–1(2)(c) (Vernon Supp.1996). Foster contends, however, that because article 5.06–1(2)(c) does not mention *under* insured motor vehicles, the legislature did not authorize insurers to develop exclusions for these vehicles. Foster argues that by defining an uninsured motor vehicle to include an underinsured motor vehicle, TIE is attempting to apply illegally a valid uninsured motor vehicle exclusion to underinsured motor vehicles. According to Foster, the application of an exclusion to an underinsured motor vehicle, such as the DART bus, is inconsistent with the UIM statute and, therefore, unenforceable.

■ When the legislature provides for specific exclusions or exceptions to a statute, "the intent is usually clear that no others shall apply." *Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 307 (Tex.1978). In *Unigard*, the supreme court addressed an insurance policy exclusion to statutorily required personal injury protection (PIP). The court held that any exclusion other than the one set forth in the PIP statute was repugnant to the statute. *Id.* Although the court stated the PIP statute and UIM statute had similar public policy aspects supporting them, it also recognized there were significant differences between the statutes. *Id.* at 308. One of these differences is that the PIP statute mandates a particular exclusion.[1] By comparison, the UIM statute does not state a specific exclusion, but instead sets forth a type of exclusion that may be used by the insurer.[2] Because the UIM statute does not contain a specific mandatory exclusion, we cannot infer any legislative intent to prohibit other exclusions.

■ Texas case law has uniformly applied article 5.06–1(2)(c) to underinsured motor vehicles when analyzing insurance policy exclusions. *See, e.g., Griffin*, 868 S.W.2d at 868; *State Farm Mut. Ins. Co. v. Conn*, 842 S.W.2d 350, 351 (Tex.App.—Tyler 1993, writ denied). Furthermore, the Texas Supreme Court has recognized that the public policy principles underlying uninsured motorist coverage apply equally to underinsured motorist coverage. *Stracener*, 777 S.W.2d at 382. The UIM statute is to be construed liberally to give effect to the public policy that led to its enactment. *Id.* An exception to a statute will sometimes be implied where it is necessary to give effect to the legislative intent. *North Common Sch. Dist. v. Live Oak County Bd. of Sch. Trustees*, 145 Tex. 251, 256, 199 S.W.2d 764, 766 (1946). This Court has held that article 5.06–1(2)(c) expresses the legislative intent not to guarantee UIM coverage in every case. *See Griffin*, 868 S.W.2d at 868. We conclude the application of an exclusion to an underinsured vehicle is not inconsistent with the UIM statute.

Foster additionally argues the government-owned vehicle exclusion is invalid because application of the exclusion depends upon a comparison of the amount recoverable from the government with the limits of the policy's UIM coverage. Foster contends this mathematical determination of coverage violates the Texas Supreme Court's holding in *Stracener v. United Services Automobile Ass'n. See Stracener*, 777 S.W.2d at 381–82. We disagree.

In *Stracener*, the court held that underinsured motor vehicle status, as defined in the UIM statute, should not be determined by comparing the amount of liability insurance proceeds available from the tortfeasor with the limits of the insured's underinsured motor vehicle coverage.[3] *Id.* at 383. The court concluded that a negligent party is underinsured whenever the available proceeds of his liability insurance are insufficient to compensate the injured party for his actual damages. *Id.* at 380. In making this ruling, the court was interpreting the statutory definition of an underinsured motor vehicle. The court's analysis did not address the application or propriety of an exclusion.

---

1. Article 5.06–3(e) states:
    An insurer *shall* exclude benefits to any insured ... when the insured's conduct contributed to the injury he sustained in any of the following ways:
      (1) Causing injury to himself intentionally.
      (2) While in the commission of a felony, or while seeking to elude lawful apprehension or arrest by a law enforcement official.
    Tex. Ins.Code Ann. art. 5.06–3(e) (Vernon 1981) (emphasis added).

2. Article 5.06–1(2)(c) states:
    The Board *may*, in the policy forms adopted under Article 5.06 of this code, define "uninsured motor vehicle" to exclude certain motor vehicles whose operators are in fact uninsured.

    Tex. Ins.Code Ann. art. 5.06–1(2)(c) (Vernon Supp. 1996) (emphasis added).

3. Article 5.06–1(2)(b) defines an "underinsured motor vehicle" as

    an insured motor vehicle on which there is valid and collectible liability insurance coverage with limits of liability for the owner or operator which were originally lower than, or have been reduced by payment of claims arising from the same accident to, an amount less than the limit of liability stated in the underinsured coverage of the insured's policy.

    Tex. Ins.Code Ann. art. 5.06–1(2)(b) (Vernon Supp. 1996).

Here, TIE argues only that coverage was not available pursuant to a valid exclusion in the policy. In contrast to *Stracener*, TIE does not contend the DART bus was not an underinsured motor vehicle as defined by the UIM statute. We conclude, therefore, that *Stracener* is inapplicable.

■ Finally, Foster argues the government-owned vehicle exclusion in the policy violates the public policy underpinnings of the UIM statute because the availability of coverage is dependent upon the identity of the tortfeasor, which is a condition beyond the insured's control. Foster contends that an exclusion that provides coverage for collisions with certain vehicles but not for others is unreasonable. It is not the purpose of the UIM statute, however, to protect the insured from all underinsured motor vehicles. *See Francis v. International Serv. Ins. Co.*, 546 S.W.2d 57, 61 (Tex.1976). The purpose is to provide protection only from those motorists who are financially irresponsible. *Id.* In *Francis*, the supreme court held that the government was not a "financially irresponsible" party for the purposes of uninsured motor vehicle protection simply because it was shielded from liability by sovereign immunity. *Id.* Likewise, the fact that DART's liability is limited by statute does not make it financially irresponsible for the purposes of the UIM statute.

The UIM statute ·does not prevent insureds from taking on known risks associated with underinsured motorists. Insureds can reject such coverage entirely if they so choose. *See* TEX. INS.CODE ANN. art. 5.06–1(1) (Vernon 1981). To protect itself from accidents with government-owned vehicles, the insured has the option of raising its UIM coverage limits above the government's statutory limit of liability. If the insured choos-

es not to raise its coverage limits, it takes on the known risk of being able to recover only the statutory limit of the government's liability. We conclude the government-owned vehicle exclusion does not violate the purpose of the UIM statute. We overrule Foster's first point of error.[4]

Foster's second and third points of error address the application of CIGNA's subrogation rights to the money interpleaded by DART and the bus driver. Under section 417.002(a) of the Texas Workers' Compensation Act, the net amount recovered by a workers' compensation claimant in a third-party action must be used to reimburse the workers' compensation insurance carrier for benefits it has paid for the claimant's injury. TEX. LAB.CODE ANN. § 417.002(a) (Vernon 1996). Although Foster acknowledges that CIGNA is entitled to recoup the benefits it paid, he contends CIGNA is not entitled to reimbursement for the attorney's fees it paid his lawyer in the underlying compensation case or the interest it paid on back-benefits. According to Foster, neither of these amounts was paid as a benefit. Foster maintains each was paid because of CIGNA's original rejection of his claim and, therefore, CIGNA should not be allowed to recover money that would not have been owed but for its wrongful conduct.

■ Section 408.221(b) of the Texas Workers' Compensation Act provides that attorney's fees incurred by a claimant are payable out of the benefits recovered by the claimant. TEX. LAB.CODE ANN. § 408.221(b) (Vernon 1996). In construing the predecessor to section 408.221(b), this Court held that because a claimant's attorney's fees are assessed against the claimant's benefits, the fees are a part of the award of compensation, not an addition to it.[5] *Capps v. American Mut.*

---

4. TIE additionally argues that Foster was properly denied coverage because the policy excludes coverage for accidents with underinsured motor vehicles owned or operated by a self-insurer such as DART. Because we conclude Foster was properly denied coverage under the government-owned vehicle exclusion, we do not address the validity of the self-insurer exclusion. *See* TEX. R.APP. P. 90.

5. Article 8306, section 7c, like section 408.221(b), provided for the assessment of the

claimant's attorney's fees against the benefits received by the claimant. Specifically, section 7c stated that attorney's fees are "assessed against the interest of those receiving benefits from the service of such attorney." TEX.REV.CIV. STAT. ANN. art. 8306, § 7c (Vernon Supp.1996), *repealed by* Acts of 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(7) to (9), 1989 Tex. Gen. Laws 1, 114. Section 7c further stated that if the workers' compensation carrier was notified of a claim or agreement for attorney's fees, the same shall be a

*Liab. Ins. Co.,* 601 S.W.2d 816, 818 (Tex.Civ. App.—Dallas 1980, no writ). Because the attorney's fees are part of the compensation benefits paid to the claimant, they are properly recoverable by the insurance carrier under section 417.002(a). *See* TEX. LAB.CODE ANN. § 417.002(a) (Vernon 1996) (recovery in a third-party action "shall be used to reimburse the insurance carrier for *benefits,* including medical benefits, that have been paid for the compensable injury") (emphasis added).

■ CIGNA's interest payment is also properly recoverable. The purpose of reimbursing the workers' compensation insurance carrier out of the claimant's third-party recovery is to reduce the burden of insurance on the employer and the public and to prevent the claimant from obtaining a double recovery. *Performance Ins. Co. v. Frans,* 902 S.W.2d 582, 584–85 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Employers Casualty Co. v. Henager,* 852 S.W.2d 655, 658–59 (Tex.App.—Dallas 1993, writ denied). Foster has already received the interest payment the Texas Workers' Compensation Commission ordered CIGNA to pay. If Foster were allocated the amount of that interest payment out of the interpleaded funds, he would, in effect, be receiving that interest payment twice. The reimbursement provision was enacted to prevent this type of double recovery. We conclude the trial court properly applied CIGNA's subrogation rights and allowed CIGNA to recover its attorney's fees and interest payments out of the interpleaded funds. We overrule Foster's second and third points of error.

We affirm the trial court's order granting summary judgment to TIE. We also affirm the trial court's orders awarding CIGNA the allocated portions of the interpleaded funds.

lien against any amount thereafter paid as compensation. *Id.*