2022 IL App (1st) 210491

FIFTH DIVISION
Order filed: February 18, 2022

No. 1-21-0491

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| UNIQUE INSURANCE CO., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CH 14696 |
| | ) | |
| COREY TATE, | ) | Honorable |
| | ) | Allen Price Walker, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1 The defendant, Corey Tate, appeals from an order of the circuit court of Cook County granting summary judgment in favor of the plaintiff, Unique Insurance Co. (Unique). For the reasons that follow, we affirm.

¶ 2 The following facts relevant to the disposition of this appeal were derived from the pleadings and exhibits of record.

¶ 3 This case has its origins in a traffic accident that occurred on July 1, 2017. The accident involved Tate's vehicle and an ambulance owned and operated by the City of Chicago Fire Department (City) and driven by Antonio T. Wilson. At the time of the accident, Tate had an insurance policy with Unique that included uninsured motorist coverage (the policy). On June 4, 2018, Tate filed a complaint in the circuit court of Cook County against the City (case no. 18 L 5795), alleging negligence in the operation of the ambulance, causing it to strike his vehicle. He alleged that he suffered injuries as a result of the City's negligence and sought damages in excess of $30,000. The City moved for summary judgment, arguing that it was immune from liability for negligently operating a motor vehicle under the Local Governmental & Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/5-106 (West 2016)) unless there is an allegation of willful and wanton conduct, which Tate failed to allege. On August 19, 2019, the circuit court granted the City's motion for summary judgment and dismissed case no. 18 L 5795 with prejudice.

¶ 4 Following the dismissal of case no. 18 L 5795, Tate filed an uninsured motorist claim with Unique for the injuries he allegedly sustained as a result of the July 1, 2017 accident. He also demanded that the claim be arbitrated by the American Arbitration Association. On December 19, 2019, the American Arbitration Association sent Unique a notice of hearing for the arbitration.

¶ 5 That same day, Unique filed the instant two-count complaint in the circuit court of Cook County. Count I of the complaint sought a declaratory judgment that Tate's uninsured motorist claim for the July 1, 2017 accident is not covered by the policy because the City, as a self-insured entity, did not meet the policy's definition of an uninsured motorist. In count II, Unique sought a

declaration that, due to the judgment entered against him in case no. 18 L 5795, Tate was collaterally estopped from claiming he is legally entitled to recover compensatory damages from the City, or its driver, for bodily injuries sustained in the July 1, 2017 accident. Unique also asked the circuit court to stay the arbitration proceedings until it ruled on whether the accident is covered under the policy.

¶ 6 Unique attached to its complaint a copy of the policy. Relevant here is Part B of the policy, which is titled "Uninsured Motorist Coverage" and states the following:

"To pay all sums which the insured *** shall be legally entitled to recover as compensatory damages only and not for any punitive or exemplary damages from the owner or operator of an uninsured motor vehicle because of property damage to an automobile described in the policy and bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle, provided, for the purposes of this coverage, determination of whether the insured *** is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured *** and [Unique] or, if they fail to agree, by arbitration as herein provided."

The policy defines the term "uninsured motor vehicle" as:

"a motor vehicle or trailer with respect to the ownership, maintenance or use for which there is no bodily injury liability bond or insurance applicable at the time of the accident with respect to any person or organization legally responsible for the use of such motor vehicle, or said bond or insurance policy has limits less than required by the Illinois Financial Responsibility Law ***."

The policy excludes from the definition of "uninsured motor vehicle" any vehicle or equipment: "(2) owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

(3) owned by any governmental unit or agency ***."

¶ 7 Tate filed an answer and asserted two counterclaims against Unique. His first counterclaim sought a declaratory judgment ordering Unique to "provide uninsured motorist coverage consistent with the insurance policy" it issued to him. His second counterclaim alleged that Unique violated section 155 of the Insurance Code (Code) (215 ILCS 5/1-555) (West 2018) due to its "unreasonable delay" in settling Tate's claim.

¶ 8 On August 3, 2020, Unique moved for summary judgment. Tate filed a response to Unique's motion for summary judgment in which he argued that he was not collaterally estopped from bringing an uninsured motorist claim. Specifically, he argued that the summary judgment entered against him in case no. 18 L 5795 was not a final judgment "on the merits, but to the immunity status of the City;" and as such, the judgment does not impact "his right to recovery as a whole" in the instant case. To find otherwise, Tate argued, would violate public policy by depriving drivers of their right to a recovery. Lastly, Tate noted that Unique incorrectly claimed in its motion for summary judgment that the City ambulance was "uninsured" when, in fact, the City is a self-insured entity.

¶ 9 Unique filed a reply, arguing that Tate's admission in his response that the City is a selfinsured entity is, on its own, fatal to his uninsured motorist claim because the policy's definition of an uninsured motor vehicle specifically exempts vehicles that are "owned or operated by a selfinsurer."

¶ 10 On January 13, 2021, the circuit court entered an order staying the arbitration of Tate's uninsured motorist claim. It also ordered the parties to file supplemental briefing addressing how the summary judgment entered in favor of the City in case no. 18 L 5795 impacted Tate's uninsured motorist claim.

¶ 11 In Tate's supplemental brief in opposition to Unique's motion of summary judgment, he argued that the summary judgment in favor of the City in case no. 18 L 5795 created an uninsured motorist claim, even though the City was insured at the time of the accident. In support of his contention, Tate cited to section 143a of the Code (215 ILCS 5/143a (West 2018)), which states that tortfeasors who have insurance at the time of the accident will be considered uninsured motorists for purposes of uninsured motorist coverage if the tortfeasor's insurer subsequently becomes unable to make payment due to a court entering an order of liquidation by reason of insolvency. He asked the court to likewise find that the City ambulance that struck him was an uninsured motor vehicle because, even though it was insured at the time of the accident, a subsequent court order removed his ability to recover. Tate also argued that judgment in favor of Unique would undermine the purpose of section 143a of the Code; namely, to ensure adequate compensation for damages and injuries sustained in motor vehicle accidents.

¶ 12 Unique filed its supplement brief in support of its motion for summary judgment, arguing that the policy's definition of uninsured motor vehicle is not against public policy because no Illinois law requires an insurer to extend uninsured motorist coverage to accidents involving an insured government vehicle that is immune from tort liability. Unique concluded by stating that

"[o]nly the legislature may expand the requirements of the uninsured motorist statute [section 143a of the Code]" to include claims against government entities not liable due to tort immunity and it "has not done so."

¶ 13 On April 13, 2021, the circuit court entered a written order granting Unique's motion for summary judgment. In its order, the court found that: (1) the definition of "uninsured motor vehicle" in the policy was not against public policy; and (2) the summary judgment entered against Tate and in favor of the City in case no. 18 L 5795 was a determination on the merits and collaterally estopped Tate from making an uninsured motorist claim against Unique for the same accident. The court also stated that its order was a "final disposition of all issues and all matters in this case." This appeal followed.

¶ 14 On appeal, Tate argues that we should reverse the circuit court's grant of summary judgment in favor of Unique because his accident with the City ambulance is covered under Part B of the policy.

¶ 15      A motion for summary judgment may be granted where the pleadings, depositions, admissions, and affidavits establish that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *WKS Crystal Lake, LLC v. LeFew*, 2015 IL App (2d) 150544, ¶ 13. Our review of a summary judgment is *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Likewise, interpreting an insurance policy or a statute presents questions of law, so our review is *de novo. Hoover v. Country Mutual Insurance Co.,* 2012 IL App (1st) 110939, ¶ 32. With these principles in mind, we turn to Tate's contentions on appeal that his July 1, 2017 accident is covered by the policy's uninsured motorist provision.

¶ 16 An insurance policy "is a contract and, as such, is subject to the same rules of interpretation that govern the interpretation of contracts. [Citation.] Accordingly, when construing the language of an insurance policy, the court's primary objective is to determine and effectuate the parties' intentions as expressed in their written agreement. [Citation.] If the terms in the policy are 'clear and unambiguous,' they must be given their plain and ordinary meaning. [Citation.]" *Erie Insurance Exchange v. Triana*, 398 Ill. App. 3d 365, 368 (2010).

¶ 17 Unique maintains that it is entitled to summary judgment on its two-count complaint. With regard to count I, Unique argues that it is entitled a declaratory judgment that the City ambulance that struck Tate's vehicle does not meet the policy's definition of an uninsured motor vehicle because the City was self-insured at the time of the accident. As to count II, Unique contends it is entitled to a declaratory judgment that Tate is collaterally estopped from asserting he is legally entitled to recover compensatory damages from the City for the injuries he suffered on account of the summary judgment entered against him in case no. 18 L 5795.

¶ 18 We address first Unique's argument that it was entitled to summary judgment on count I of its complaint because the ambulance involved in the July 1, 2017 accident does not meet the policy's definition of an uninsured motorist.

¶ 19 Part B of the policy defines an "uninsured motor vehicle" as a vehicle "for which there is no bodily injury liability bond or insurance applicable at the time of the accident *** or said bond or insurance policy has limits less than required by the Illinois Financial Responsibility Law ***." The policy also contains an exclusionary clause, which states that the term "uninsured motor vehicle" does not include a vehicle "owned or operated by a self-insurer" or "owned by any governmental unit or agency ***."

¶ 20 Here, it is undisputed that Tate's vehicle was struck by an ambulance owned and operated by the City—a governmental unit. Moreover, by Tate's own admission, the ambulance was not uninsured at the time of the accident, but rather, self-insured. Thus, under the plain terms of the policy, the City ambulance that struck Tate was not an "uninsured motor vehicle" and his claim is not covered by Part B of the policy.

¶ 21 Tate nevertheless argues that we should find his claim is covered under Part B of the policy for two reasons: (1) the City is not a self-insured entity; and (2) the policy's definition of an uninsured motor vehicle is unduly restrictive, and therefore it is against this State's public policy as expressed in section 143a of the Code (215 ILCS 5/143a (West 2016)). He also argues that, should we conclude that the City ambulance does not meet the policy's definition of an uninsured motor vehicle, the ambulance meets the definition of an "underinsured motorist" under the policy.

¶ 22 As to Tate's first contention—that the City is not a self-insured entity—we note that Tate did not raise this argument before the circuit court, and in fact, this argument directly contradicts his contention below. As such, Tate's argument runs afoul of two well-settled principles: "a party that does not raise an issue in the trial court forfeits that issue and may not raise it for the first time on appeal" (*Wells Fargo Bank, N.A. v. Maka*, 2017 IL App (1st) 153010, ¶ 24) and "[a] party is estopped from taking a position on appeal that is inconsistent with a position the party took in the trial court" (*In re Stephen K.*, 373 Ill. App. 3d 7, 25 (2007)). Accordingly, we will not consider Tate's argument that the City was not, as he claimed below, a self-insured entity.

¶ 23 Tate's next contention is that the policy's definition of an uninsured motor vehicle is unduly restrictive because it excludes government vehicles and self-insured vehicles, and therefore, it goes

against this State's public policy as expressed in section 143a of the Code (215 ILCS 5/143a (West 2016)).

¶ 24 "Section 143a provides that every liability insurance policy issued for any motor vehicle registered or principally garaged in Illinois must provide coverage for bodily injury or death caused by an uninsured or hit-and-run vehicle." *Luechtefeld v. Allstate Ins. Co.*, 167 Ill. 2d 148, 152 (1995); see 215 ILCS 5/143a (West 2016). "It is well-settled law that the purpose behind the statutorily mandated uninsured motorist provision is that the insured be placed in substantially the same position as if the wrongful uninsured driver had been minimally insured." *Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272, 277 (1992). The statutory coverage is mandatory, and it may not be "whittled away by an unduly restrictive [policy] definition" of uninsured vehicle. *Pellegrini v. Jankoveck*, 245 Ill. App. 3d 35, 37 (1993) (quoting *Smiley v. Estate of Toney*, 44 Ill. 2d 127, 130 (1969)).

¶ 25 Tate supports his contention that the policy's definition of an uninsured motor vehicle is unduly restrictive by citing to *Franey v. State Farm Mutual Automobile Insurance Co.*, 5 Ill. App. 3d 1040 (1972). In *Franey*, this court was called on to determine whether it was unduly restrictive for an insurance policy to exclude from its definition of an "uninsured automobile" any "land motor vehicle which is owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing." *Id.* at 1044. The *Franey* court concluded that the exclusion was unduly restrictive because "[i]t is obvious that the operator of a governmentally owned vehicle need not be insured." *Id.* at 1044-45. As the court further explained in a supplemental opinion upon denial of a petition for rehearing, "[i]f the driver of the State

automobile is uninsured, then the occurrence is within the scope of the mandatory uninsured motorist coverage." *Id.* at 1047.

¶ 26 Ultimately, we find Tate's reliance on *Farney* to be misplaced. Although we acknowledge that *Farney* offers direct support for Tate's contention that the policy's exclusion of government vehicles from its definition of an uninsured motor vehicle is unduly restrictive, there can be no argument that *Farney* supports a similar finding with regard to the policy's exclusion of selfinsured vehicles. Indeed, the logic underpinning *Farney*'s conclusion with regard to the exclusion of governmental vehicles—that it is possible such vehicles are uninsured—simply cannot be applied to self-insured vehicles. Consequently, we are not persuaded that *Farney* supports a finding that the policy's definition of an uninsured motor vehicle is unduly restrictive on the grounds that it excludes self-insured vehicles.

¶ 27 Nor are we persuaded that the policy's exclusion of self-insured vehicles undermines section 143a's purpose, which, as previously mentioned, is to place the insured in substantially the same position as if the wrongful uninsured driver had been minimally insured. Simply put, a selfinsured driver is not, by definition, an uninsured driver because self-insurance satisfies the financial responsibility requirements of the Illinois Vehicle Code. See 625 ILCS 5/108-2 (West 2016). In other words, the City ambulance that struck Tate's vehicle is not the type of "wrongful driver" section 143a protects insured drivers from. Therefore, the policy's exclusion of self-insured vehicles from its definition of an uninsured motor vehicle is not at odds with section 143a's purpose.

¶ 28 Having concluded that the City ambulance involved in the July 1, 2017 accident with Tate did not meet the policy's definition of an uninsured motor vehicle, we must now consider Tate's

alternative argument that the City ambulance meets the policy's definition of an "underinsured motorist." Unique responds that Tate has forfeited this argument because he never raised the issue in the circuit court. We agree with Unique. We have reviewed all of the pleadings Tate filed in the circuit court and none of them include an argument that the City ambulance that struck his vehicle on July 1, 2017, was underinsured. Moreover, there is no evidence that Tate submitted a claim for coverage under the underinsured motorist provision of his policy with Unique. Throughout this entire proceeding, Tate's position has consistently been that he is entitled to recover only under the policy's uninsured motorist provision. As previously mentioned, a party may not raise an argument on appeal that was not first raised in the circuit court. *See Maka*, 2017 IL App (1st) 153010, ¶ 24. Tate has, therefore, forfeited this argument.

¶ 29 To summarize, we find that the City ambulance that struck Tate's vehicle is not an uninsured motor vehicle as defined by Part B of the policy because the City was self-insured. We also find that the policy's definition of an uninsured motor vehicle is not unduly restrictive, nor is it against public policy. Lastly, we find that Tate forfeited his alternative argument that the City ambulance was an underinsured motor vehicle because he failed to raise the issue in the circuit court. Accordingly, the circuit court did not err when it granted summary judgment in favor of Unique.

¶ 30 Because we conclude that the City ambulance involved in the July 1, 2017 accident does not fall under the policy's definition of an uninsured motor vehicle, we need not address whether Tate is collaterally estopped from asserting that he is legally entitled to recover compensatory damages from the City for any injuries he sustained in the July 1, 2017 accident.

¶ 31     For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 32     Affirmed.

Attorneys for Appellant:    Hannah Johnson McCready
                            Garcia & Leet, P.C.
                            111 W. Washington St.
                            Suite 1760
                            Chicago, IL 60602
                            Phone: (773)779-9885


Attorneys for Appellee:     DONALD PATRICK ECKLER
                            GOLDBERG SEGALLA, LLP
                            222 West Adams Street
                            Suite 2250
                            Chicago, Illinois 60606
                            Mailing Address: P.O. Box 957, Buffalo, NY 14201
                            Phone: (312) 572-8427