2025 IL App (2d) 240049-U
No. 2-24-0049
Order filed November 5, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* ESTATE of JUDITH COOLIDGE, A Disabled Person | ) ) ) ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | No. 23-GR-52 |
| | ) | |
| (David B. Coolidge and Steven K. Coolidge, Petitioners-Appellees v. Judith Coolidge, Respondent-Appellant.) | ) ) ) ) | Honorable Joseph M. Grady, Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The trial court's jurisdiction over the respondent was not divested when the respondent left Illinois; (2) the trial court did not abuse its discretion when it denied respondent a jury trial where the respondent refused to attend the proceedings in person; and (3) the trial court's order appointing a plenary guardian of respondent's person and estate is affirmed, where the trial court's finding that the respondent was a disabled adult without capacity was not against the manifest weight of the evidence. Trial court is affirmed.

¶ 2    This appeal arises from a dispute over the guardianship of the person and estate of respondent, Judith Coolidge, the elderly mother of petitioners, David B. Coolidge and Steven K. Coolidge. The court adjudged Judith as a person with a disability and appointed an independent guardian as Judith's guardian of the estate and person. On appeal, Judith raises several issues

including that (1) the trial court lacked personal jurisdiction over her, (2) the trial court's order appointing a plenary guardian of her person and estate was against the manifest weight of the evidence, and (3) the trial court improperly denied her a jury trial. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On February 24, 2023, David filed a petition to be appointed temporary and plenary guardian of the person and estate of Judith on the basis that she was an elderly disabled person at risk of financial exploitation and endangerment. Three days later, on February 27, David also filed a separate *emergency* petition to appoint a temporary guardian of the person and estate of Judith, asserting that temporary guardianship was necessary for the immediate welfare and protection of Judith's estate and person. Therein, David alleged that Judith's husband died and she had been diagnosed with Parkinson's disease. In 2020, Judith executed power of attorney for health care and power of attorney for property, naming David as her agent. Since that time, David assisted Judith with her healthcare appointments and finances.

¶ 5      In January 2022, Judith was involved in a car accident, in which she sustained several broken ribs, a fractured sternum, and a leg injury that resulted in a chronic open wound. In March 2022, Judith moved into River Glen, an assisted living facility in St. Charles, because her deteriorating condition required daily care and help with bathing and medication management, including taking insulin for type-2 diabetes. Judith was treated at the hospital for the open wound on her leg approximately twice a week. Judith relied on a walker to move around.

¶ 6      David also alleged that in December 2022, Susan Coolidge, Judith's only daughter, traveled from her home in Kentucky and took Judith from her assisted living facility to Judith's house in St. Charles. Susan then moved into Judith's home, paid no rent, and became Judith's

caregiver. Since then, Judith's condition worsened. Susan failed to adequately help Judith move around the house with her walker. Judith's home was not safe because it was "severely hoarded" and not outfitted to accommodate Judith's limited mobility. The home had wood planks and an unsecured hazardous ramp over the stairs leading from the home into the garage that did not accommodate the width of Judith's walker. The other entrances/exits of the home had stairs with no accommodation for Judith. Susan disassembled Judith's bed, placed her mattress and box spring on the floor, and left the bed railing in the middle of the hallway, causing an additional hazard.

¶ 7     David further alleged that in the two months since Susan removed Judith from assisted living, she cancelled Judith's healthcare appointments, failed to monitor Judith's diabetes, and stopped giving Judith insulin. Judith lost 13 pounds. Susan also stopped several of Judith's other prescribed medications without a doctor's approval. Despite a nurse practitioner's advice against travel due to the open wound and need for continuous care, Susan intended to take Judith to her Florida condominium. Further, Susan used Judith's credit card for personal gain. When David attempted to visit Judith and help prepare her tax returns, Susan denied David entry into the house and told him that she "had the powers of attorney changed." David alleged that if Judith or Susan were to receive notice of this emergency petition, there was a likelihood that Susan would remove Judith from the State of Illinois.

¶ 8     On February 27, 2023, the trial court held a hearing on David's petitions. The court recognized that no notice was provided to Judith or Susan because there was "a flight risk, [and Susan] intends to take [Judith] to Kentucky" or Florida. The court found that Judith was:

"[A]t-risk of actual harm [and] needs a guardian to make her health care and financial decisions, to ensure [Judith] continues treatment for chronic illnesses and acute wound and injury care, ensures continued placement at a long[-]term respite care facility

for her welfare and safety, protect and secure [Judith's] assets, and pay [her] expenses." The trial court appointed David as temporary guardian of the person and estate of Judith, suspended any powers of attorney, and appointed Scott L. Seraphin as guardian *ad litem* (GAL).

¶ 9 On March 1, a summons for the appointment of guardian of alleged disabled person was issued to Judith. On March 6, Judith filed an appearance through her attorney and requested a bench trial. Judith also filed an emergency petition to dissolve or modify the temporary guardianship alleging, *inter alia*, that she was not disabled and had not received notice of the petition for temporary guardianship.

¶ 10 On March 7, the trial court held a hearing and granted Judith's motion to dissolve the temporary guardianship. The court also ordered that any powers of attorney executed by Judith remain suspended pending further order and scheduled a date for status of the GAL and neuro-psychological reports. In addition, the trial court ordered that Judith "may not be removed from the state of Illinois pending further Order of the Court."

¶ 11 On March 9, a process server effectuated service of summons and the guardianship petition on Judith at her home.

¶ 12 On March 11, Jason Morris, PsyD., conducted a neurobehavioral exam of Judith. In Morris' report, he opined that Judith presented with depression, Parkinson's disease, anxiety, and "impairment in making treatment and complex decision[s]." Further, Morris stated that Judith showed signs of "Stockholm syndrome," due to her excessive dependence on her daughter Susan and her withdrawal from other family members.

¶ 13 On March 27, the GAL presented his report to the trial court. The GAL stated that he met Judith at her house on March 23 and handed her the notice of petition for guardianship and her rights. The GAL was concerned for Judith's safety because the house was not accommodated for

Judith, she spent most of the day alone and could fall without assistance. The GAL also interviewed Judith's four adult children, her sister, the nurse practitioner who treated her open wound, a member of Senior Services, and the director of the River Glen assisted living facility. All of Judith's children but Susan told the GAL that Judith needed a guardian. The nurse practitioner stated that Judith's wound—which remained open for more than a year—would have healed if Susan had not interfered. The trial court appointed Life with Dignity Guardian, Inc. (LWD) to assess Judith's needs and care, ordered an independent evaluation by a licensed neuropsychiatrist, and ordered that Judith was not to be removed from Illinois without further court order.

¶ 14    David filed a supplemental petition for the appointment of LWD as limited guardian for the person and estate of Judith. David attached to the petition the report Judith's primary-care physician, Alicia Lee, M.D. Dr. Lee opined that Judith needed a guardian for medical decision-making, daily activities, and medications. Lee was concerned about Susan's inadequate care and influence. Lee advised Judith not to travel to Florida or Kentucky with Susan "since her leg wound was not healed."

¶ 15    On April 18, after a hearing on the supplemental petition, the trial court appointed LWD temporary guardian of the estate and person of Judith. The court found that Judith:

> "[N]eeds a guardian to make her health care and financial decisions, to ensure [Judith] continues treatment for chronic illnesses and acute wound and injury care, ensures continued placement at a long[-]term respite care facility for her welfare and safety, protect and secure [Judith's] assets, and pay [her] expenses."

¶ 16    On May 1, Judith filed an emergency petition to reconsider, dissolve, or modify the guardianship. Her second attorney filed an appearance, answer, and a demand for a jury trial.

¶ 17    On May 16, Geoffrey S. Shaw, M.D., a board-certified adult and geriatric psychiatrist,

submitted his court-ordered independent medical evaluation that assessed Judith's capacity to make her own personal and financial decisions. In his report, Dr. Shaw indicated that he interviewed Judith, David, Susan, the GAL, and the temporary guardian from LWD. Shaw also reviewed the reports from the GAL and Dr. Lee, Dr. Morris' neuropsychological test results, and the petitions for appointment of guardianship.

¶ 18    Dr. Shaw opined to a reasonable degree of medical certainty, that Judith had "impaired executive functioning, resulting from Neurocognitive Disorder," which is a precursor to dementia. She had impaired executive functioning regarding rational decision making. Judith had reduced or discontinued her prescribed medications, minimized the condition of her living environment, and was overwhelmed by certain financial matters. As a result of her neurocognitive disorder, Shaw found Judith was "partially incapable of making personal and financial decisions."

¶ 19    On May 17, LWD, as temporary guardian, filed an emergency motion for the return of Judith to her home in St. Charles and for the engagement of fulltime caregivers. LWD alleged that it was unable to locate Judith. Judith was removed from her home on or about May 13 and her current location was unknown. Judith was last seen by LWD during a scheduled wellness check on May 1.

¶ 20    On May 18, the trial court held a hearing on LWD's motion. Judith and Susan appeared remotely through Zoom and stated that they were in Sheridan, Illinois. The court ordered Judith to return home by May 20, and Susan to leave Judith's home by May 22. The court also ordered that Judith have fulltime caregivers in her home. The court extended the temporary guardianship "for good cause shown."

¶ 21    On June 1, Judith filed a petition to terminate the guardianship. On June 27, the trial court denied Judith's emergency petition to terminate the guardianship and her petition to reconsider,

dissolve, or modify the guardianship. The court ordered that Susan shall not be allowed on Judith's St. Charles property.

¶ 22 On July 13, Judith petitioned the court for permission to travel to Kentucky for her birthday with Susan on July 15. The following day, the trial court denied Judith's petition, noting that it did not constitute an emergency and was not properly noticed. Judith filed a motion to reconsider. On August 18, after a hearing, the court partially granted Judith's motion to reconsider by limiting her travel within Kane County. The court also ordered Judith to inform the temporary guardian when she leaves her home, when she returns and where she goes. The court prohibited Susan from accompanying or driving Judith anywhere outside the house between 9 a.m. and 5 p.m.

¶ 23 On July 31, 2023, LWD as temporary guardian filed a petition for rule to show cause against Susan. LWD alleged that Susan had an additional Discover credit card issued in her name on Judith's account and obtained trading privileges on Judith's Charles Schwab account. In addition, in violation of court orders, Susan continued to visit Judith at her home and interfered with caregiver services.

¶ 24 On August 29, David filed a motion requesting the trial court to order Susan to file an appearance. Subsequently, David filed a motion to compel Susan to comply with a subpoena issued for Judith's financial records and written communications, including emails and text messages between Susan and Judith. On September 6, the trial court granted both of David's motions.

¶ 25 On September 15, David filed a motion to compel discovery against Judith alleging that she had failed to respond to interrogatories and requests to produce documents despite two prior extensions of the deadline. David then refiled his motion to compel as an emergency motion because the trial was set to begin in less than one week. On September 20, the trial court granted the motion in part, ordering Judith to produce her cell phone for inspection with her counsel

present. On September 22, the trial court struck the trial dates because Judith had been admitted to the hospital.

¶ 26    At the end of October, LWD filed an emergency motion to locate Judith and for a rule to show cause against Judith and Susan. LWD alleged that on October 29, it attempted a wellness check at Judith's home but could not locate her. The Kane County Sherriff reported that Judith's garage door was open and her truck was missing. The sheriff telephoned and spoke with Judith but could not determine her location. The following day, Judith's counsel filed motions to withdraw because of communication "breakdown." On October 31, the trial court ordered Susan to report to court and issued a body attachment against Susan, alone, with no bond. The court found Judith to be a missing person and authorized issuance of a "Silver Alert."

¶ 27    On November 3, the trial court held a hearing on Judith's counsel's motions to withdraw and granted the motion. Judith and Susan appeared remotely by Zoom. Judith told the court that she was out of state. She acknowledged the court's advisement that because her attorneys had withdrawn, she had 21 days to retain counsel or enter an appearance on her own behalf.

¶ 28    On November 8, David filed a motion to appoint a successor trustee, and to compel distribution of trust assets to pay for her expenses. Judith filed another petition to discharge the guardian and dismiss the case. Judith claimed that she had full mental capacity because she scored 30/30 on her many mini-mental exams. She also asserted that the appointment of the temporary limited guardian, LWD, was "against [her] will, thus forcing [her] into another prisonership [*sic*]" and that she was essentially "being put on 'house arrest' like a criminal."

¶ 29    On November 9, Judith appeared remotely by Zoom. When asked directly by the court, she refused to disclose her location. The court found Judith to be a missing person, issued an alias order for rules to show cause against Judith and Susan, and directed Judith to appear in person on

November 29.

¶ 30    On November 29, Judith again failed to appear in person. She appeared remotely by Zoom, refused to reveal her location, and insisted on a "remote trial," stating, "I will not come back to the state." The court explained that it does not do:

> "remote trials because [the court] does not know who is with anybody in a remote situation[,] *** if somebody is coaching anybody. [The court] can't see the actual reactions [and faces] of the people."

The trial court scheduled the jury trial on the petition for guardianship to begin on December 11, 2023, denied Judith's request to appear remotely, and ordered all parties to appear in-person for the trial. The court deemed Judith to have filed a *pro se* appearance when she filed her petition to discharge the guardian and dismiss the case. The court directed notice to be sent to Judith's email address. The court also appointed Steven Coolidge as "Special Trustee of the Trust" to cover Judith's expenses and fees as ordered by the court.

¶ 31    On December 8, the trial court held a pretrial conference and stated that it required everyone to appear in person for the upcoming jury trial. Via Zoom, Judith told the court, "I can't appear in person because you have an order for me to be taken into custody." The trial court explained that "the courthouse, like a church, is a place of sanctuary," and "if you aren't here in person, I will take that as an implied waiver of your right to a jury trial." Judith replied that she would "appear outside the court, but *** I'm not going to be taken into custody." The trial court's order stated that Judith's "failure to appear in person may be construed as a waiver of her jury demand."

¶ 32    On December 11, the scheduled trial date, Judith did not appear in person but appeared again remotely by Zoom. She filed an emergency motion to strike the trial date "for lack of

jurisdiction and to dismiss [the] temporary guardianship." Judith argued the trial court did not have personal jurisdiction over her because David filed a supplemental petition for guardianship on December 6 which was less than the statutorily required 14 days before the trial. She stated that she was "no longer a resident of the State of Illinois[, she] left Illinois on 10/28/23 ***[, and would] not be returning to Illinois until [she was] free from this court proceeding entirely," and requested to only appear on Zoom. Judith also moved to dismiss the temporary guardianship, arguing that it had exceeded the statutory limit of 120 days.

¶ 33    The trial court's written order stated:

> "With Judith Coolidge appearing via Zoom, despite numerous and repeated admonitions and Court Orders that she must appear in person for her Jury Trial, and presenting no valid excuse why she cannot be present in person but for absolute refusal to abide by this Court's Orders, this Court finds that Judith has waived her right to a Jury Trial."

The court discharged the jury pool, and the case proceeded to a bench trial. We note that the record does not contain the report of proceedings, or a suitable substitute, for December 11.

¶ 34                    A. Bench Trial on the Petition for Guardianship

¶ 35    The bench trial continued December 12. The trial court admitted into evidence Dr. Shaw's report, Dr. Morris' report and the GAL's report.

¶ 36    Dr. Shaw testified that he obtained his medical degree in Northern Ireland and was trained at Northwestern Hospital in Chicago. The trial court found Dr. Shaw qualified as an expert in geriatric psychiatry. Dr. Shaw testified that he evaluated Judith in April 2023 and wrote a report regarding the evaluation on May 1, 2023. Dr. Shaw had reviewed the reports of Dr. Morris, Dr. Lee, and the GAL. During his examination of Judith, she stated that she was unsure whether she

continued to have diabetes and doubted her Parkinson's diagnosis. Judith's mental exams indicated early-stage vascular dementia. Dr. Shaw opined that Judith had "deficits with executive functioning, and as a result, was partially incapable of making decisions." He explained:

"Executive functioning is really the terminology that's used to describe how an individual arrives at a given decision. It involves the need to comprehend the information that's presented and the need to process the information and come up with decisions that are in the individual's best interests or enable them to make rational decisions or problem-solving."

¶ 37    Dr. Shaw opined that Judith's neurocognitive impairment or neurovascular dementia impacted her ability to make decisions regarding her person and finances, and left her vulnerable to undue influence, exploitation, and abuse. The mini-mental exams that Judith scored 30/30 were "very rudimentary." In Judith's situation, the "simple mini-mental status tests can be somewhat misleading [regarding] her executive functioning." Further, untreated diabetes and untreated Parkinson's disease would negatively affect Judith's neurovascular dementia.

¶ 38    Dr. Shaw was asked questions about Judith's actions after he examined her. These actions included Judith leaving Illinois against court orders, her refusal to appear in person at her trial, and her reliance on Susan to the exclusion of her remaining family members and to the detriment of her health. Dr. Shaw testified that Judith's actions supported his opinion that she had impaired executive functioning. He opined based on a reasonable degree of medical certainty that Judith was now totally incapable of making responsible decisions regarding her wellbeing, healthcare, and finances. Dr. Shaw testified that he believed that Judith needed a guardian of her person and estate.

¶ 39    Judith called no witnesses. She attempted to read from a prepared statement that addressed

the divide among her children that arose after her husband died. Although the court ruled that Judith's testimony was irrelevant, it allowed her to speak in a narrative manner for approximately five minutes.

¶ 40 On December 13, 2023, the trial court found Judith to be a disabled person 18 years or older who is totally without capacity as specified in section 11a-3 of the Probate Act, that her disability dated back to the filing of the petition filed on February 24, 2023, and that the appointment of a guardian of the person and estate was necessary for Judith's protection. The court appointed Arosa Home Care plenary guardian of the person and estate of Judith and discharged LWD as temporary guardian. The court revoked Judith's powers of attorney for property and healthcare purportedly naming Susan as agent and denied Judith's emergency motions to strike the trial date, modify the guardianship order, and discharge the guardianship and the case.

¶ 41 Judith, *pro se*, timely appealed.

¶ 42                                    II. ANALYSIS

¶ 43 On appeal, Judith asserts the trial court's guardianship orders are void for lack of personal jurisdiction, the orders were not supported by sufficient evidence, and the trial court denied her right to a jury trial. However, before we reach the merits of the appeal, we must resolve Judith's motion to strike David and Steven's appellee briefs.

¶ 44                          A. Motion to Strike Appellee's Briefs

¶ 45 After David and Steven filed their appellee's briefs, Judith filed a motion in this court to strike David and Steven's briefs. She asserted that their briefs contained improper matter. We decided to address that motion with the case. We now deny Judith's motion.

¶ 46 In her motion to strike, Judith argues that David and Steven's briefs fail to comply with Illinois Supreme Court Rules 341(h) (eff. Oct. 20, 2020). Judith essentially asserts that certain

parts of David and Steven's briefs contain improper argument and "tone" along with inaccurate and misleading statements of fact that lack support in the record. We deny Judith's motion to strike. Instead, we have disregarded any inappropriate or unsupported material and any argument contained in those sections. See *Super Mix of Wisconsin, Inc. v. Natural Gas Pipeline Co. of America*, LLC, 2020 IL App (2d) 190034, ¶ 28 ("Where a brief has failed to comply with the rules, we may strike portions of the brief or dismiss the appeal should the circumstances warrant."). We turn now to Judith's arguments.

¶ 47                                      B. Temporary Guardianship

¶ 48     Judith maintains that the trial court's temporary guardianship order is void for lack of personal jurisdiction and that there was there was no evidence that she was disabled. We address these arguments in turn.

¶ 49                                      1. Personal Jurisdiction

¶ 50     Judith contends that the February 2023 temporary guardianship order is void for lack of personal jurisdiction because she did not receive notice of the hearing on David's petition for temporary guardianship.

¶ 51     A judgment is considered void if the court lacks personal jurisdiction or subject matter jurisdiction. *In re Marriage of Tronsrue*, 2025 IL 130596, ¶ 33. Personal jurisdiction refers to a court's power to exercise authority over an individual. See *id.* "Absent a general appearance, personal jurisdiction can be acquired only by service of process in the manner directed by statute." *People v. Matthews*, 2016 IL 118114, ¶ 17. We review *de novo* whether the trial court obtained personal jurisdiction. *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 17. Section 11a-4(a-5) of the Probate Act provides:

         "Notice of the time and place of the hearing on a petition for the appointment of a

temporary guardian shall be given, not less than 3 days before the hearing, by mail or in person to the alleged person with a disability, to the proposed temporary guardian, and to those persons whose names and addresses are listed in the petition for adjudication of disability and appointment of a guardian under Section 11a-8. *The court, upon a finding of good cause, may waive the notice requirement under this subsection.*" (Emphasis added.) 755 ILCS 5/11a-4(a-5) (West 2022).

¶ 52    Here, the trial court found good cause and waived notice to Judith. Judith's contention that David "falsely alleg[ed] Susan would remove her from Illinois," ignores the uncontroverted fact that Susan subsequently took Judith out of Illinois to an undisclosed location. Indeed, Judith did not return to Illinois to appear in person as ordered by the court throughout the proceedings. Therefore, the trial court properly found good cause to waive the notice requirement under section 11a-4(5-a) of the Probate Act. *Id.* For that reason, the trial court had personal jurisdiction of Judith for purposes of the temporary guardianship order.

¶ 53                              2. Temporary Guardianship Order

¶ 54    Next, Judith maintains that the trial court granted David temporary guardianship without evidence that Judith was disabled. However, section 11a-4, which relates to the appointment of a temporary guardian, does not require evidence of disability, as opposed to section 11a-8, which concerns petitions for the adjudication of disability and for the appointment of a plenary guardian. *Id.* §§ 11a-4, 11a-8. Section 11a-4 provides that "the court may appoint a temporary guardian upon a showing of the necessity therefor for the immediate welfare and protection of the *alleged* disabled person or his estate on such notice and subject to such conditions as the court may prescribe." (Emphasis added.) *Id.* § 11a-4(a). Therefore, Judith is mistaken that the trial court needed definitive evidence that she was disabled to appoint a temporary guardian.

¶ 55    Judith also argues that the court's order appointing a temporary guardian failed to state actual harm as required by section 11a-4(a). However, the court stated in its written order:

"This Court finds that [Judith] is at risk of actual harm that necessitates the temporary guardianship under §11-4(a) of the Probate Act because [Judith] is at risk of financial exploitation and endangerment, needs a guardian to make her health care and financial decisions, to ensure [she] continues treatment for chronic illnesses and acute wound and injury care, ensures continued placement at a long term respite care facility for her welfare and safety, protect and secure [Judith's] assets, and pay [her] expenses."

Accordingly, the record refutes Judith's contention that the trial court failed to identify the actual harm.

¶ 56                              C. Plenary Guardianship

¶ 57    Judith contends that the trial court lacked jurisdiction over her regarding its plenary guardianship order, improperly denied her request to appear remotely for a jury trial, and that the trial court's finding that she was a disabled person was against the manifest weight of the evidence.

¶ 58                              1. Personal Jurisdiction

¶ 59    Judith argues that the trial court did not have personal jurisdiction over her for purposes of the plenary guardianship order because she did not receive 14 days' notice of David's supplemental petition.

¶ 60    Personal jurisdiction may be established either by service of process in accordance with statutory requirements or by a party's voluntary submission to the court's jurisdiction. *Municipal Trust & Savings Bank v. Moriarty*, 2021 IL 126290, ¶ 17. The record establishes that Judith voluntarily submitted to the jurisdiction of the court on March 6, when her attorney filed a written appearance on her behalf. On May 9, a process server effectuated personal service to Judith of the

summons and the plenary guardianship petition. Further, Judith, both by counsel and *pro se*, participated in the trial court proceedings, including pretrial and trial proceedings. Accordingly, we determine that the trial court had personal jurisdiction over Judith in the guardianship proceedings.

¶ 61    Judith maintains that the court lacked personal jurisdiction because David filed a supplemental petition on December 6, and therefore, she did not receive 14 days' notice as required by section 11a-10(e) of the Probate Act. 755 ILCS 5/11a-10(e) (West 2022). Section 11a-10(e) requires notice to a respondent 14 days before a section 11a-8 hearing. Here, David filed his section 11a-8 petition on February 24 and the hearing on that petition was held on December 11 and 12, well after the 14-day requirement. Moreover, Judith cites no authority that indicates that the filing of a supplemental petition divests the trial court of personal jurisdiction. She also fails to assert how David's supplemental petition differed from the original petition and how the filing of supplemental petition prejudiced her at trial. For these reasons, we reject Judith's argument.

¶ 62    Judith also argues that prior to the plenary guardianship hearing, in November 2023, the trial court was divested of personal jurisdiction pursuant to section 203 of the Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act (Guardianship Jurisdiction Act) (755 ILCS 8/203 (West 2022)), because she established residency in Florida. We disagree with Judith.

¶ 63    The Guardianship Jurisdiction Act provides that a court of this state has jurisdiction to appoint a guardian for a respondent under certain enumerated conditions, including in situations where this state is the respondent's "home state." *Id.* § 203(1). "Home state" is defined by the Guardianship Jurisdiction Act as follows:

> "[T]he state in which the respondent was physically present, including any period
>
> of temporary absence, for at least six consecutive months immediately before the filing of

a petition for a protective order or the appointment of a guardian; or if none, the state in which the respondent was physically present, including any period of temporary absence, for at least six consecutive months ending within the six months prior to the filing of the petition." *Id.* § 201(a)(2).

¶ 64    Here, when David filed his petitions for temporary and plenary guardianship over Judith in February 2023, the record is clear that Judith was physically present in Illinois. Therefore, at the time David filed the petitions, Illinois was Judith's "home state" pursuant to section 201(a)(2) of the Guardianship Jurisdiction Act (*id.*), and thus Illinois had jurisdiction to appoint a guardian over Judith's person and estate. *Id.* § 203(1). The committee comments to section 203 of the Guardianship Jurisdiction Act make clear that once a petition is filed in the court of the respondent's "home state," that state does not cease to be the respondent's home state due to the passage of time even though it may be many months before an appointment is made or order issued. Guardianship Jurisdiction Act § 203 Comment. Only upon dismissal of the petition can the court cease to be the home state due to the passage of time. *Id.*

¶ 65    Here, the trial court exercised jurisdiction as a court of Judith's home state by entering an order appointing LWD temporary guardian of Judith's person and estate in February 2023, pursuant to section 11a-4 of the Probate Act (755 ILCS 5/11a-4 (West 2022)) and by entering the December 2023 plenary order. Section 205 of the Guardianship Jurisdiction Act provides that once the trial court has appointed a guardian, it has exclusive and continuing jurisdiction over the proceeding until it is terminated by the court, or the order expires by its own terms. 755 ILCS 8/205 (West 2022). Accordingly, the trial court was not divested of personal jurisdiction over Judith.

¶ 66                    2. Request for Remote Jury Trial

¶ 67    Next, Judith argues that at the December hearing on the petition to appoint a plenary guardian, the trial court denied her right to a remote jury trial under section 11a-11 of the Probate Act. 755 ILCS 5/11a-11 (West 2022).

¶ 68    Although section 11a-11(a) provides that a "respondent is entitled to *** demand a jury" at a hearing on a petition to appoint a plenary guardian, nothing in this or any other section of the Probate Act provides for *remote* jury trials. Remote appearances in evidentiary hearings are governed by Illinois Supreme Court Rule 45 (eff. Jan. 1, 2023) and Illinois Supreme Court Rule 241 (eff. Feb. 2, 2023).

¶ 69    Rule 45(c), which governs remote appearances in circuit court proceedings, states that in civil matters "[c]ase participants shall be permitted to attend court via the circuit court's available remote appearance technology," except for certain types of proceedings such as evidentiary hearings and jury and bench trials, which "require the approval of the judge presiding over the matter." Ill. S. Ct. R. 45(c) (eff. Jan. 1, 2023). Rule 241 provides that, during trials or evidentiary hearings, the "court may *** for *good cause shown and upon appropriate safeguards*, allow a case participant to testify or otherwise participate in a civil trial or evidentiary hearing by video conferencing from a remote location." (Emphasis added.) Ill. S. Ct. R. 241 (eff. Feb. 2, 2023). The trial court has discretion to determine if remote participation is appropriate for a particular case. See *id.* ("A court has broad discretion to determine if [remote] participation *** [is] are appropriate for a particular case."); see also *In re H.B.*, 2022 IL App (2d) 210404, ¶ 71 (we applied an abuse of discretion standard to the trial court's decision to conduct a hybrid trial). An abuse of discretion occurs when the trial court's decision is unreasonable. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009).

¶ 70    Good cause must be shown because of the importance of in-person testimony. Ill. S. Ct. R. 241, Committee Comments (rev. Feb. 2, 2023). Good cause may be established "when a witness

is unable to attend trial for unexpected reasons, such as accident or illness, [and] in foreseeable circumstances such as residing or working far from the courthouse or having a disability that prevents an in-person court appearance." *Id.*

¶ 71 Here, Judith failed to establish good cause. She asserts that the trial court erred when it denied her request for a remote jury trial. Judith maintains that she needed to appear remotely because the court had issued an order authorizing LWD to place her into respite care upon her return to Illinois. The record indicates that Judith left Illinois in violation of a court order and told the court that she would not return. We reject Judith's attempt to establish good cause through the violation of a court order and the attempt to evade a second court order.

¶ 72 Further, when allowing remote testimony, the court must impose adequate safeguards to ensure accurate identification of the participant and to avoid improper influences by any individual who may be present with the participant during their testimony. See *In re, H.B.*, 2022 IL App (2d) 210404, ¶ 70; see also Ill. S. Ct. R. 241, Committee Comments (rev. Feb. 2, 2023). Here, the trial court could not take appropriate safeguards to avoid the improper influence of Susan over Judith. For these reasons, we determine the trial court properly exercised its discretion when it denied Judith's request to participate remotely in a jury trial, and, instead, conducted a bench trial.

¶ 73                    3. Trial Court's Finding of Disability

¶ 74 Next, Judith contends that the trial court's plenary guardianship order was improper because it was based on a "risk of financial exploitation" rather than a finding by clear and convincing evidence of disability as defined in section 11a-2(a) of the Probate Act (755 ILCS 5/11a-2(a) (West 2022)).

¶ 75 Section 11a-2 of the Probate Act defines a "disabled person" as "a person 18 years or older who (a) because of mental deterioration or physical incapacity is not fully able to manage [her]

person or estate." *Id.* § 11a-2. Under section 11a-3(a) of the Probate Act, "the court may adjudge a person to be a person with a disability, but only if it has been demonstrated by clear and convincing evidence that the person is a person with a disability as defined in Section 11a-2." *id.* § 11a–3(a). Upon an adjudication that a person is disabled, the trial court may appoint a guardian of his person and of his estate. *Id.*

¶ 76     The adjudication of disability is a uniquely factual question that is made by the trial court and will not be disturbed upon review unless the trial court's findings are against the manifest weight of the evidence. *In re Estate of Walter*, 2023 IL App (1st) 211600, ¶ 29. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Best v. Best*, 223 Ill. 2d 342, 350 (2006). We will not substitute our judgment for that of the trial court regarding the credibility of witnesses, the weight to be given the evidence, or the inferences to be drawn. *Id.* at 350-51.

¶ 77     Here, the evidence supported the trial court's finding that Judith was a disabled person in need of a guardian of her person and her estate because of mental deterioration under section 11a-2(a). Dr. Shaw's initial report indicated that Judith was *partially* cognitively impaired. However, at trial, seven months later, Dr. Shaw opined that Judith was by then totally incapable of making sound decisions regarding her personal wellbeing, healthcare, and finances. Dr. Shaw also opined that Judith had severely diminished executive functioning that eroded her ability to comprehend information presented to her, process the information in a rational manner, and act in her own best interests. Accordingly, Dr. Shaw 's testimony supported the trial court's finding that Judith was a "disabled person" based on clear and convincing evidence. Upon that finding, the trial court had the power to appoint a guardian of her person and estate. Judith presented no evidence at trial and

gives us no reason on appeal to determine that Dr. Shaw's testimony and report were not credible or reliable. Therefore, on this record, we cannot say that the trial court's decision to appoint a plenary guardian of Judith's person and estate was so unreasonable, arbitrary, or not otherwise based on the evidence that it was against the manifest weight of the evidence. We certainly cannot do so without improperly substituting our judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn therefrom. See *In re D.F.*, 201 Ill. 2d 476, 499 (2002). We also note that the manner in which Susan controlled Judith's care, custody, and participation in these proceedings could have been properly considered by the trial court in fashioning the appropriate relief necessary to protect the person and estate of Judith based upon the evidence of record.

¶ 78                                    D. Remaining Issues

¶ 79    Judith argues for the first time on appeal, that (1) judicial bias undermined the proceedings, (2) the guardianship proceedings constituted a "RICO" enterprise, and (3) fraud and elder abuse warrant restitution. However, Judith failed to raise these claims in the trial court. Therefore, Judith has forfeited these issues. See *Unique Insurance Co. v. Tate*, 2022 IL App (1st) 210491, ¶ 22 ("a party that does not raise an issue in the trial court forfeits that issue and may not raise it for the first time on appeal.").

¶ 80    Finally, Judith raises numerous issues that are not developed or supported by relevant authority as required by Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). Judith states (1) the temporary guardian exceeded its statutory time limit, (2) at trial, the court allowed her to speak for only five minutes, (3) the court ignored exculpatory evidence, and (4) the court violated her due process rights by suspending her power of attorney that designated Susan as her agent. We are "entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive

legal argument presented," and we are not "a depository in which the appellant may dump the burden of argument and research." *First Mercury Insurance Co. v. Nationwide Security Services, Inc.,* 2016 IL App (1st) 143924, ¶ 21. Judith has failed to support these assertions with relevant authority or develop cohesive arguments with respect to any of these issues as is required by Rule 341(h)(7). See Ill. S. Ct. R. 341(h)(7) (eff. Oct 1, 2020). *Pro se* litigants are not excused from following rules regarding the form and content of appellate briefs. *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5. Therefore, she has forfeited these issues for purposes of this appeal. Ill. S. Ct. R. 341(h)(7) (eff. Oct 1, 2020).

¶ 81                                   III. CONCLUSION

¶ 82    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 83    Affirmed.